345 So.2d 272 (1977)
The BOULDER CORPORATION, an Alabama Corporation
v.
Fred E. VANN, Jr., et al.
SC 1950.
Supreme Court of Alabama.
April 8, 1977.
Rehearing Denied May 20, 1977.
William M. Acker, Jr., Birmingham, for appellant.
J. M. Breckenridge, Birmingham, for appellees.
SHORES, Justice.
Since 1964, Boulder or its principals have been involved in developing an area known as Cherokee Bend in the City of Mountain Brook. This property has been developed a section at a time. The entire area consists of some 750 acres. Involved in this litigation *273 is a small section amounting to approximately 5½ acres divided into four lots, which can be reached by Pine Mountain Road and Round Forest Drive.
In addition to this small parcel of property within the city limits of Mountain Brook, Boulder also owns a 20-acre tract which adjoins this small tract on the northern boundary. When Boulder first acquired this 20 acres, it was in Jefferson County. Thereafter, Boulder sought annexation to Mountain Brook which declined to annex the property. The 20 acres were subsequently annexed to the City of Irondale.
This litigation involves Boulder's small tract located within the city limits of Mountain Brook. Boulder sought approval of a plat of this tract divided into four lots, which plat extends from Round Forest Drive to Boulder's 20-acre tract, the southern boundary of which is the Mountain Brook city line.
The four lots involved, and for which plat approval was sought, were originally included in the 11th Sector Addition to Cherokee Bend. The current sector is designated as the 13th Sector. When approval of the 11th Sector was sought, the Planning Commission of Mountain Brook agreed to approve that plat only upon condition that the area comprising these four lots be eliminated from the subdivision. As originally submitted, the plat of the 11th Sector showed Round Forest Drive as ending in a cul-desac, these four lots being situated on the circle. When the Planning Commission insisted that these lots be eliminated as a condition to approval of the 11th Sector, the effect was to make Round Forest Drive a dead-end street abutting on the property of Boulder which is involved in this litigation. If the present plat is approved, it would have the effect of extending Round Forest Drive to a dead end abutting on the 20 acres owned by Boulder, now situated in the City of Irondale.
Boulder submitted a request for approval of the proposed plat of Sector B Addition to Cherokee Bend to the Mountain Brook Planning Commission on August 8, 1975. A hearing on the proposal was held on September 15, 1975.
At that meeting, six members of the Planning Commission were present. A court reporter, at Boulder's request, was present and recorded the proceedings. During the course of discussion on the proposed plat, the court reporter's record shows that the Planning Commission admitted that it had refused to approve the 11th Sector unless the four lots composed of the present tract be eliminated.
At the September 15 meeting, as disclosed by the record made thereof by Boulder's court reporter, there was a general discussion of whether traffic in the neighborhood would be increased if the plat was approved and, at one point, the attorney for the Planning Commission inquired whether Boulder would be willing to amend the plat to convert Round Forest Drive into a culde-sac ending short of the city limit line, which was the configuration of that street when the plat of the 11th Sector was rejected unless Boulder amended that proposed plat to eliminate the cul-de-sac.
Following the discussion, a vote was taken. Three of the members present voted to disapprove, two voted in favor and one abstained. No reason for the purported disapproval was stated.
Thereupon, Boulder filed an action for declaratory and other relief asking the court to declare that the proposed plat has in fact and in law been approved by the Planning Commission. When the defendants, members of the Planning Commission, asserted that mandamus was the exclusive remedy, the plaintiff amended its complaint and sought relief by way of mandamus. The complaint, as amended, also asserted that Boulder had never sought to dedicate to the City of Mountain Brook that portion of Round Forest Drive which would locate within the proposed 13th Sector and had never sought any commitment by the city to maintain the street. The only relief sought was approval of the plat.
The thrust of the complaint was to charge that the Planning Commission, which has exclusive jurisdiction and control *274 over subdivisions of land in the City of Mountain Brook by virtue of Title 37, § 787, et seq., Code, had not legally disapproved the map according to the provisions of Title 37, § 799, because, (1) it was not disapproved within thirty days after submission; (2) the burden of disapproval is on the Planning Commission, requiring affirmative action by a majority of its nine members; (3) if a majority of nine is not required for disapproval, then a majority of those members present is required; (4) that the absence of any ground of disapproval on the records of the commission constitutes approval; and (5) that the Planning Commission was arbitrary and capricious in that it violated its own Subdivision Regulations and did not employ a fair standard or condition for approval or disapproval, which constituted a violation of the due process, equal protection and just compensation provisions of the Constitution of the United States.
The complaint was filed on October 13, 1975, and served on the defendants the same day. It contained the allegation that no ground for disapproval of the plat was stated in the records of the Planning Commission.
The defendants filed an answer: (1) Stating that the complaint failed to state a claim upon which relief could be granted; (2) denying the legal conclusions asserted in the complaint, but admitting the essential factual allegations; and (3) asserting that the plaintiff should have appealed the Planning Commission's action to the City Council.
After the complaint was amended to include a petition for relief by way of mandamus, the defendants amended their answer to say that Boulder had not complied with state law on Subdivision Regulations in submitting the plat. This amended answer also alleged that:
"C. The Planning Commission . . after a hearing thereon, denied the plaintiff's request for preliminary approval of Davis & Perkins Addition to Cherokee Bend, 13th Sector, and set out in the minutes of the Commission separate and several grounds therefor as follows:
"`1. Traffic would be greatly increased.
"2. Residents in this area bought their homes with the understanding this area would not be opened up and the streets would be left dead end streets.
"3. The extension of Round Forest Drive into Irondale would disrupt the peace and tranquility of the neighborhood.
"4. Noise pollution would be increased.
"5. Round Forest Drive should end in a cul-de-sac within the Mountain Brook city limits.
"6. Round Forest Drive is a residential street and not a through street, and if not terminated in a cul-de-sac, Round Forest Drive would become a through street.
"7. Round Forest Drive is a "minor street" or a "local street" as defined in the Mountain Brook Subdivision Regulations.
"8. If Round Forest Drive is extended as proposed, such extension will destroy its character as a "minor street" or "local street".
"9. The proposed extension of Round Forest Drive will create an unnecessary danger to the lives of children who as pedestrians use Round Forest Drive, Pine Mountain Road and/or Kennesaw Drive.
"10. The proponents failed or refused to declare the use they plan for the adjacent property in Irondale to which Round Forest Drive would connect.'"
The record before us shows that no meeting of the Planning Commission was held in October, 1975. The next meeting to be held after the September 15 meeting was held on November 3, 1975. The minutes of that meeting reveal the following:
"The Secretary read the minutes for the September 15, 1975 meeting and presented them for approval. Mr. Bolvig moved that the minutes as read be corrected to set out the grounds for the denial of preliminary approval of Davis & Perkins Addition to Cherokee Bend, 13th Sector, which grounds to be set out in *275 said minutes immediately following the recordation of the vote on the motion to deny preliminary approval, were and are separately and severally as follows:"
The foregoing ten grounds were then set out. A motion to approve the minutes of the September 15 meeting as corrected was seconded and approved unanimously.
It is obvious from the above that minutes of the September 15 meeting had been prepared and that such minutes did not contain any grounds for the denial of approval of Boulder's plat of 13th Sector.
The authority of the Planning Commission to exercise control over subdivision of lands within the municipality is derived from the legislature. Title 37, § 786, et seq., Code. It is authorized to adopt regulations not inconsistent with the statutes. The Mountain Brook Planning Commission has adopted such regulations. In exercising its function approving or disapproving any particular subdivision plat, the Commission acts in an administrative capacity, and is bound by any limitations on its authority contained in the legislation authorizing it to act, as well as any restrictions contained in its own regulations.
"In the area of subdivision control, a planning commission can exercise only those powers granted to it by charter or general statute. Where the commission exceeds such power, its action is void." 2 Yokley, Zoning Law & Practice (3d Ed., 1976 Cumulative Supplement), § 12-3.
Title 37, § 799, Code, sets out the procedure and legal effect of approval of a subdivision plat. It provides in pertinent part:
"The planning commission shall approve or disapprove a plat within thirty days after the submission thereof to it; otherwise such plat shall be deemed to have been approved, and a certificate to that effect shall be issued by the commission on demand: Provided, however, that the applicant for the commission's approval may waive this requirement and consent to an extension of such period. The ground of disapproval of any plat shall be stated upon the records of the commission. . . ."
In Sandlin v. Goldstein, 264 Ala. 358, 87 So.2d 861 (1956), this court was called upon to construe this statute. In that case, the developer presented a plat of a proposed subdivision to the Planning Commission of the City of Huntsville on March 3, 1955. A public hearing was held on April 7, 1955. On June 2, 1955, the developer demanded of the Planning Commission a certificate of approval of the plat. It refused to issue the certificate, and the developer filed a petition for mandamus against the members of the commission. The trial court refused to order the issuance of the certificate and the developer appealed. Justice Stakely, writing for the court, held:
". . . For more than thirty days after the submission of the aforesaid plat to the Commission for its approval or disapproval, the defendants as such commissioners have neither approved or disapproved said plat. . . .
". . .
"Upon a consideration of the matter. . . we feel that the language of § 799 . . . is clear and explicit and that the legislature intended to provide the protection set forth in the act to the one filing the plat. . . ." (264 Ala. at 359, 87 So.2d at 862.)
The court went on to hold that, under those facts, the developer had shown a clear legal right to a certificate of approval and reversed the trial court for failure to so order.
It is clear, therefore, that this court, like most others, has held that statutes such as § 799 contain certain provisions for the protection of the property owner. The requirement that the commission approve or disapprove plats within a certain time is such a provision and is mandatory.
§ 799 contains two other such provisions: No plat shall be acted on by the commission without affording a hearing thereon and, if disapproved, the ground of disapproval shall be stated on the records of the commission.
Surely the legislature did not intend to compel a planning commission to make a *276 decision on a subdivision plat until it had all of the pertinent facts before it. Nor is it reasonable to assume that the legislature mandated that a public hearing be held within thirty days of the filing of a plat. Obviously, such hearing must be set within a reasonable time, but it is only after the question is ripe for decision that the legislature requires approval or disapproval within thirty days. Such was the factual situation in Sandlin v. Goldstein, supra. There, the plat was filed with the commission on March 3. The public hearing was not held until April 7. However, mandamus issued to compel the issuance of a certificate of approval because the commission failed to act within thirty days after the hearing, and not because the hearing was set beyond thirty days of the date of filing.
Therefore, as we interpret § 799, in order to give meaning to all of its provisions, it seems clear that the legislature has mandated that a planning commission must either approve or disapprove a plat within thirty days after its submission. Because a public hearing is also mandated, it follows that a meaningful decision on whether to approve or disapprove cannot be made until such hearing has been conducted. Only after the required public hearing has been held is the planning commission in a position to approve or disapprove a plat submitted for a decision. It has thirty days thereafter in which to act. If it fails to do so, the plat is deemed approved. If it disapproves the plat, the ground for doing so must be stated in its record within thirty days of the date of submission.
In the instant case, Boulder filed its plat and check for $65, the customary charge for processing a subdivision map, with the Planning Commission on August 8, 1975. On August 19, the commission issued notice of a public hearing to be held on September 15. Such hearing was held, at the conclusion of which three of the six members present voted to disapprove. No ground for such disapproval was stated in the commission's records until November 3, after these proceedings were filed, seeking to have the court compel the issuance of a certificate of approval.
Like the petitioner in Sandlin v. Goldstein, supra, we think the petitioner here has shown a clear legal right to a certificate of approval of its plat, because the Planning Commission failed to act within the time and in the manner mandated by the legislature.
Because we hold that the mandatory requirement of the statute, that grounds for disapproval of the plat be stated within thirty days after submission to the commission, was not followed in this case, we pretermit a discussion of the number of votes necessary to disapprove a subdivision plat.
Reversed and remanded for the entry of judgment consistent herewith.
REVERSED AND REMANDED.
TORBERT, C. J., and MADDOX, JONES, ALMON, EMBRY and BEATTY, JJ., concur.
BLOODWORTH and FAULKNER, JJ., dissent.
FAULKNER, Justice (dissenting).
The majority holding says this: Planning Commission, you did not give your reasons for disapproving Boulder's plat within 30 days after its submission to you. Therefore, the statute mandates that for this omission you must be deemed to have approved the plat. So, give Boulder a certificate.
The majority's submission date (September 15) is contra to Boulder's argued submission date (August 8) in brief.
Boulder says that it "submitted to the Planning Commission its request for approval of the 13th Sector on August 8, 1975. If the Planning Commission action on September 15, 1975, can be considered a denial. . . then the purported denial nevertheless came more than 30 days after August 8, 1975 . . ." The majority recognizes the fallacy of this argument. However, the trial judge, as well as the Planning Commission counsel got caught up in this web of miscalculation. Both mentioned the 30 days time period as beginning to run *277 from August 8. The majority is, therefore, correct in saying the time frame began on September 15, the date of the public hearing; the plat was submitted then. It was filed on August 8.
The Commission acted on the submission of the plat on September 15 by disapproving it. There were 6 members present at the meeting. Three voted to disapprove; two voted for approval, and one member abstained. The minutes were corrected on November 3 to show the reasons for disapproval. The majority says that the reasons must be stated within 30 days after submission; if not, there is automatic approval of the plat under the statute. The statute says no such thing. Tit. 37, § 799 provides:
"Procedure; legal effect of approval of plat.The planning commission shall approve or disapprove a plat within thirty days after the submission thereof to it; otherwise such plat shall be deemed to have been approved, and a certificate to that effect shall be issued by the commission on demand: Provided, however, that the applicant for the commission's approval may waive this requirement and consent to an extension of such period. The ground of disapproval of any plat shall be stated upon the records of the commission." (Emphasis added.)
The statute merely provides that the ground of disapproval shall be stated upon the records of the Commission. When? The logical answer is that the legislature intended the ground to be stated in the due course of Commission business. The majority's approach is indeed unique to statutory construction. It not only goes beyond the terms of § 799, but also is inconsistent with other provisions of the article on city and regional planning. To hold that the legislature intended that if, on a vote of disapproval, no ground is stated on the record within thirty days, there is an automatic approval, means that, in some instances, the Commission would have to approve the minutes on the very day of the proceeding. The statute does not provide that the plat will be deemed approved because no grounds of disapproval are stated on the Commission records. The deemed approval comes about by the Commission's failure to act. Sandlin v. Goldstein, 264 Ala. 358, 87 So.2d 861 (1956). Here, the Commission acted. But assume, arguendo, that the statute said emphatically that the ground of disapproval must be stated in the records within thirty days after submission. What do we have in this case? A declaratory action was filed on October 13, two days before the expiration of the 30-day period. (The 30 days after submission expired on October 15.) The suit was based upon an invalid vote of disapproval, no ground for disapproval stated, and arbitrary and capricious abuse of discretion. This dateOctober 13was the very day that Boulder had requested in its appeal to the City of Mountain Brook to "please put the Boulder Corporation on the City Council's agenda for Monday night, October 13. If you think we need to bring any additional data with us, please ask Ann to let me know." The letter was signed by H. M. Davis on behalf of Boulder. It was dated September 19.
After suit was filed on October 13, and service had on the same date, the City Council did not take up the Boulder appeal on the agenda for its October 13 meeting. It appears that Boulder was acting post haste to take legal action. Common courtesy should have been extended to the City Council for an opportunity to act.
It is my opinion that the legislature did not intend to require the Planning Commission to enter the grounds for its disapproval of a plat upon its records within 30 days after submission, but only that the grounds be stated upon the records in the due course of the business of the Commission. The remedy for a failure to state the grounds is not to declare the disapproval invalid. The proper remedy is mandamus to correct or to complete the minutes. City of Guntersville v. Walls, 252 Ala. 66, 39 So.2d 567 (1949). The developer would then have an opportunity to petition a court to determine whether the Commission acted arbitrary and capricious.
BLOODWORTH, J., concurs.