298 S.E.2d 148

**Harry KAUFMAN & Gold Construction Co.**

v.

**The PLANNING & ZONING COMM. OF the CITY OF FAIRMONT, et al. RSPD. Below, Suzanne Kennedy, et al.**

**No. 15496.**

Supreme Court of Appeals of West Virginia.

Nov. 24, 1982.

Philip C. Petty, Rose, Southern & Pad-
den, Fairmont, for appellant.

George R. Higinbotham, Higinbotham & Higinbotham, J. Scott Tharp, Tharp, Liotta & James, Fairmont, for appellees.

McGRAW, Justice:

The appellants appeal an order of the Marion County Circuit Court affirming the Fairmont Planning and Zoning Commission's rejection of a subdivision plat submitted for its approval. The appellants are Harry Kaufman, the owner of 44 acres of land located in the southern part of Fairmont known as Watson Hill, and Gold Construction Co. [Gold], the firm which submitted the plat to the Zoning and Planning Commission [Commission], the appellee. Additionally, residents of the Watson Hill area intervened in this case in the lower court and participated in the argument before this Court.

Sometime prior to June, 1980, Kaufman entered into an agreement to sell 12 acres of land to Gold. The land fronts U.S. Route 250, a major throughfare, and is located between that roadway and the Tygart River. At the time of the agreement, a portion of the property was zoned for single-family residences only, while the remaining tract was zoned for multi-family use. Gold planned to construct eight single-family houses in the area restricted to such use, and to build 26 duplexes in the multi-family area. In all, the company planned to construct 60 housing units. When construction was complete, the company intended to sell the houses to the Fairmont Housing Authority. That agency would purchase the development with funds provided by the United States Department of Housing and Urban Development. The Fairmont Housing Authority would manage the development and would select occupants from low-income applicants.

In June, 1980, Gold submitted a request for preliminary plat approval to the Fairmont Zoning and Planning Commission as prescribed by W.Va.Code § 8–24–28 (1976 Repl.Vol.).[1] The plat detailed the location of the proposed subdivision, the size of individual lots, the location and width of streets and other specifications required by Fairmont City Ordinance No. 425, the city's subdivision control ordinance.

The Commission held a public meeting October 8, 1980, on Gold's proposal. Watson Hill residents, particularly those living in two middle-class developments near the Kaufman property, attended the meeting. They vehemently opposed the proposed subdivision. Various individuals claimed that renters would not care for property as well as owners, and that this lack of care would reduce the value of their property. They also argued that the subdivision would place a strain on U.S. Route 250, already a high-volume, two-lane highway. Additionally, they protested that schools would be adversely affected by the influx of children from the subdivision. Remarks also were made about the unattractive nature of the low-income residents of the proposed subdivision.

After receiving these comments, the Commission unanimously denied preliminary plat approval. The Commission cited several technical flaws in the plat as grounds for denying the proposal. Commission members also professed their belief that a rental project would not be harmonious with the existing developments.

Gold subsequently redesigned the plat and resubmitted it to the Commission. At a second public hearing, held January 21, 1981, Gold presented expert testimony concerning claimed traffic problems on U.S. Route 250, ground subsidence caused by

1. The statute provides:

   After a comprehensive plan and an ordinance containing provisions for subdivision control and the approval of plats and replats have been adopted by the governing body of the municipality or by the county court and a certified copy of the ordinance has been filed with the clerk of the county court (being in the case of a municipal plan and ordinance the county court of the county in which the municipality is located), a plat of a subdivision shall not be recorded by the clerk of such county court unless it has first been approved by the planning commission having jurisdiction over the area. If in the case of a municipal plan and ordinance, the municipality is located in more than one county, a certified copy of the ordinance shall be filed with the clerk of the county court of each such county.

prior coal mining, and the subdivision's overall design. The company also presented information which indicated that area utilities could provide the necessary services, and that the county school superintendent foresaw no problem with children from the subdivision burdening local schools. Further, area residents presented various letters[2] from the Department of Highways concerning traffic on U.S. Route 250. One letter indicated that the accident rate on that roadway was below the state average for similar throughfares.

Subdivision opponents again voiced their feelings. Some speakers made derogatory remarks about the intrinsic nature of renters and the susceptibility of public housing developments to deterioration. A local realtor expressed his opinion that property values would decrease in the existing neighborhoods because of the development's presence. Increased highway traffic and overcrowded schools were cited again as reasons for denying approval of the subdivision. Opponents presented no empirical evidence or expert testimony to substantiate any of these claims.

At the conclusion of the hearing, the Commission again voted unanimously to deny Gold's application. The Commission admitted that it found no technical flaws in the plat proposal. It justified its action by finding that the development would not be in harmony with other subdivisions in the area, that construction would depreciate local property values, and that the influx of new residents would burden highway and school systems.

Gold then petitioned the Circuit Court of Marion County on a writ of certiorari, asking it to review the Commission's decision. In its petition, Gold argued that the Commission had no jurisdiction over the plat because the city had failed to file a certified copy of ordinance 425 with the county clerk.[2] The construction company also contended that the Commission had exceeded its jurisdiction by considering property value depreciation, traffic flow and overcrowding, and the public-housing nature of the development. Alternatively, Gold argued that the evidence did not support the Commission's findings even if consideration of such factors was proper. Gold also argued that the evidence did not support the Commission's findings even if consideration of such factors was proper. Gold also argued that the Commission's action constituted a taking of property in violation of the fifth and fourteenth amendments to the United States Constitution.

Before reaching its decision, the lower court allowed Watson Hill residents to intervene in the case. The lower court also permitted the city to supplement the record developed before the Commission by taking testimony from Richard Pyles, the Commission's chairman. His testimony concerned the basis of the Commission's action, including the fact that individual Commission members had considered personal experiences and utilized information obtained outside the hearings in making their decision. These experiences and information included traffic accidents on U.S. Route 250, perceived problems in the local schools, and problems experienced elsewhere with public-housing developments.

The lower court issued an opinion July 21, 1981, affirming the denial of plat approval by the Commission. The court found that the city's failure to comply with the statute did not preclude the Commission from asserting jurisdiction over Gold's request.[3] Further, it held that the Commission could properly consider matters other than the technical requirements set forth in ordinance 425. Thus, the lower court held that property value depreciation, the rental nature of the project, and the impact of the proposed development on local highways and schools were legitimate concerns which the Commission could consider independently of information required by statute and ordinance. The court found that the evidence supported the Commission's findings with regard to these factors and that approval of the plat would not result in harmonious development with existing subdivisions. It further held that

---

2. See footnote seven, *infra.*

3. See footnote seven, *infra.*

the Commission's action had not taken private property in violation of the federal constitution.

I.

This case presents a variety of conflicting rights and societal goals. Kaufman seeks to convey his property to Gold, presumably in order to make money. Without plat approval, Gold cannot construct the subdivision. Therefore, its interest in the property as a site for development will likely disappear. The company presumably wishes to construct houses in order to make money. On the other side, the City of Fairmont wishes to regulate community growth. The intervening neighborhood residents wish to prevent what they perceive to be a threat to their investments in land and homes and to the nature of their community. The Fairmont Housing Authority and the federal Department of Housing and Urban Development hope to provide decent housing to the less fortunate members of our society.

Beneath this mass of conflicting rights and goals, or perhaps obscured by it, is the relationship between zoning and planning, and the matters which a planning commission may consider in reviewing subdivision plats. A municipality or county planning commission's authority derives from statute. W.Va.Code § 8–24–1 authorizes municipal and county governing bodies to establish planning commissions and sets out broad goals.[4] W.Va.Code § 8–24–30 lists the permissible considerations which a planning commission may use in reviewing subdivision plats.[5] W.Va.Code § 8–24–28 authorizes governing bodies to enact ordinances concerning subdivision control and plat approval.[6] Pursuant to this statute, the City of Fairmont enacted ordinance 425. Fairmont, W.Va., Ordinance 425 (June 7, 1976).

We have considered the relationship of zoning and planning and the extent of a planning commission's authority previously in *Singer v. Davenport*, 164 W.Va. 665, 264 S.E.2d 637 (1980). There, we observed that the "purpose of zoning is to provide an overall comprehensive plan for land use,

---

4. W.Va.Code § 8–24–1 provides:

The governing body of every municipality and the county court of every county may by ordinance create a planning commission in order to promote the orderly development of its governmental units and its environs. It is the object of this article to encourage local units of government to improve the present health, safety, convenience and welfare of their citizens and to plan for the future development of their communities to the end that highway systems be carefully planned; that new community centers grow only with adequate highway, utility, health, educational and recreational facilities; that the needs of agriculture, industry and business be recognized in future growth; that residential areas provide healthy surroundings for family life; and that the growth of the community is commensurate with and promotive of the efficient and economical use of public funds.

In accomplishing this objective, it is intended that the planning commission shall serve in an advisory capacity to the governing body of a municipality or a county court, that certain regulatory powers be created over developments affecting the public welfare and not now otherwise controlled, and that additional powers and authority be granted to the governing bodies of municipalities and to counties to carry out the objective and overall purposes of this article.

5. W.Va.Code § 8–24–30 provides:

In determining whether an application for approval shall be granted, the commission shall determine if the plat provides for:

(1) Coordination of subdivision streets with existing and planned streets;

(2) Coordination with and extension of facilities included in the comprehensive plan;

(3) Establishment of minimum width, depth and area of lots within the projected subdivision;

(4) Distribution of population and traffic in a manner tending to create conditions favorable to health, safety, convenience and the harmonious development of the municipality or county; and

(5) Fair allocations of areas for streets, parks, schools, public and semipublic buildings, homes, utilities, business and industry.

As a condition of approval of a plat the commission may specify:

(1) The manner in which streets shall be laid out, graded and improved;

(2) Provisions for water, sewage and other utility services;

(3) Provision for schools;

(4) Provision for essential municipal services; and

(5) Provision for recreational facilities.

6. See footnote one, *supra*.

while subdivision regulations govern the planning of new streets, standards for plotting new neighborhoods, and the protection of the community from financial loss due to poor development." *Id.*, 164 W.Va. at 669, 264 S.E.2d at 640. Thus, in *Singer* we attempted to delineate the cloudy boundary between zoning and planning, recognizing that zoning is concerned with whether a certain area of a community may be used for a particular purpose, while planning involves how that use is undertaken.

The issue in *Singer* was "the extent to which the planning commission is accorded general authority to oversee the location of subdivisions or their desirability, rather than the way they are constructed." *Id.*, 164 W.Va. at 670, 264 S.E.2d at 641. Put another way, the issue was the extent to which a planning commission may make zoning rather than planning decisions. In *Singer* we sustained the lower court's reversal of the Jefferson County Planning Commission's denial of a subdivision plat for two reasons. First, the planning commission attempted to zone via its decisions even though county residents had consistently rejected zoning ordinances. *Id.*, 164 W.Va. at 669, 264 S.E.2d at 640. Second, the regulations adopted for subdivision control by the planning commission did not sufficiently detail the grounds for which the plat was denied. *Id.*, 164 W.Va. at 670, 264 S.E.2d at 641.

The present case differs from *Singer* in that the residents of Fairmont have approved a zoning ordinance which specifically allows multi-family housing in the Watson Hill area. Thus, the factual situation is reversed from *Singer*. This case involves whether a planning commission may "rezone" property by denying plat approval for uses permitted by the zoning ordinance.

Additionally, we must examine whether state law, city ordinance or Commission regulation authorized the Commission to consider the factors cited as justification for plat denial.

II.

The appellant has presented several assignments of error. Of these claimed errors, we find it necessary to discuss the following issues: (1) whether the Commission properly considered such matters as property depreciation, traffic safety, school overcrowdedness, the rental nature of the development and the economic class of its occupants; (2) whether members of the Commission properly referred to their own observations and experiences in reaching their decision; (3) what standard of judicial review applies to decisions made by planning agencies; and (4) whether the evidence supports the Commission's decision under that standard of review.[7]

II.

The appellants contend that the Commission exceeded its jurisdiction by considering subjective factors such as property depreciation, the nature of renters, traffic safety and school overcrowdedness. The appellants argue that the Commission may consider only the technical requirements contained in the plat proposal as required by ordinance 425. The plat must detail street length and width, lot sizes and frontages, and plat approval procedures. The ordinance does not enumerate the considerations listed by the Commission as grounds for denying plat approval.[8]

The city and intervenors admit that the ordinance goes to technical considerations

7. The appellants also argue that the city's failure to file a certified copy of its subdivision ordinance with the county clerk, as required by W.Va.Code § 8–24–28 (1976 Repl.Vol.), precluded the Commission from acting on its plat proposal. The record indicates that the appellants made good-faith attempts to comply with the ordinance's technical requirements since all parties apparently believed the Commission had jurisdiction in this case. Since the appellants have complied with the ordinance and are receiving relief on the merits, we do not find it necessary to decide this question.

8. Although not relied upon by the appellee, ordinance 425 does mention harmony in its statement of purpose. "[A]ll proposed lots shall be laid out and of such size as to be in harmony with the development pattern of the neighboring property ...." Fairmont, W.Va. Ordinance 425, § 1.200 (June 7, 1976). This statement clearly relates only to the physical aspects of lot size, not the type of development and the economic class of renters. The city does not contest the fact that Gold has complied with all technical requirements.

rather than subjective judgments. However, they point to W.Va.Code § 8–24–30 [9] as authority to consider non-technical matters. That statute lists five considerations which may form the basis of the Commission's decision. The first three relate to the types of matters contained in ordinance 425. The Commission relies on W.Va.Code § 8–24–30(4) as giving it specific authority to consider factors not contained within the plat proposal. That provision requires the Commission to determine whether the plat provides for "[d]istribution of population and traffic in a manner tending to create conditions favorable to health, safety, convenience and the harmonious development of the municipality or county ...."

◼ This provision expressly authorizes the Commission to consider the effect of the subdivision's population and traffic. Therefore, we conclude that the Commission acted properly in considering the effect of the development on traffic on U.S. Route 250. The taking of evidence on this point was not in error.

There remains, however, the factors of property depreciation, the development's rental nature, the economic class of the proposed occupants, and the effect on local schools. The last factor may be dismissed since the lower court found that the evidence did not support the Commission's finding in this regard. *See generally Baltimore Planning Comm. v. Victor Development Co.,* 261 Md. 387, 275 A.2d 478 (1971) (school impact not authorized by statute). Property depreciation and the nature of renters are proper considerations, in the Commission's view, because they relate to the "harmonious development of the municipality or county ...." W.Va.Code § 8–24–30(4). We disagree.

◼ The term "harmonious development" found in W.Va.Code § 8–24–30(4) lacks the specificity necessary to adequately notify persons seeking plat approval of what they must demonstrate before a planning commission. *See generally Smith v. City of Mobile,* 374 So.2d 305 (Ala.1979). "A subdivision regulation enacted by a planning commission must be reasonable and the regulation must sufficiently restrain the discretion of the commission to insure fair administration and must sufficiently inform the property owner to insure adequate guidance in the preparation of plans." Syllabus, *Singer v. Davenport, supra.*

◼ The city attempts to fit property depreciation, the rental nature of the project and the type of potential occupants under the "harmonious development" label. This is not permissible in this instance since the city failed to adequately specify what considerations may be encompassed under such a requirement. Because of the lack of specificity found in W.Va.Code § 8–24–30(4), and the absence of more specific guidelines in the applicable city ordinance, the planning commission was not authorized to consider property values, the rental nature of projects or the economic background of renters in reviewing plat applications.

◼ Our ruling makes it clear that municipalities must specify in their subdivision ordinances what factors fall within the "harmonious development" category. If municipalities wish to avail themselves of the protection provided by W.Va.Code § 8–24–30(4), they must have ordinances which put subdividers on notice of what factors must be satisfied in order to gain commission approval.[10] Failure by municipalities to specify these considerations means that such factors are not authorized by law to be considered in the plat approval process.

A similar issue is whether Commission members are limited to considering only the evidence produced at the public hear-

---

**9.** *See* footnote five, *supra.*

**10.** The following testimony by the planning commission's chairman illustrates the need for specificity.

    MR. PETTY: There is still no way for me as a developer or land owner to figure out what a proper plat would be to conform with the harmonious development other than to present it to you and let you all tell me? MR. PYLES: I would say that would be very difficult.

ings or whether they may utilize past experiences and their own observations in reaching a decision. This question becomes important when examining the testimony of Richard Pyles, the Commission's chairman, taken before the lower court. His testimony makes it evident that Commission members used their own observations of traffic on U.S. Route 250 and their perceptions about local schools in reaching their decision. More importantly, his testimony clearly indicates that Commission members considered the public housing status of the development as well as its rental nature. The appellants argue that members may not refer to their own observations. Their position is that the Commission is limited to considering material presented to them in connection with the specific plat proposal.

■ W.Va.Code § 8–24–5 specifies who may be appointed to planning commissions and their qualifications. Appointees "shall be qualified by knowledge and experience in matters pertaining to the development of the municipality ...." W.Va.Code § 8–24–5.[11] Such qualifications are necessary to ensure that planning commissions fulfill their responsibilities regarding municipal development. This provision, however, does not authorize planning commission members to consider matters not presented to them concerning a particular subdivision plat.

■ When a planning commission approves or disapproves a plat proposal, it must do so on the basis of the evidence presented to it and for the reasons authorized by law. This allows plat applicants to submit evidence on factors which they know will form the basis of a planning commission's decision. Consideration of matters outside the record, such as members' own life experiences in an area, would prevent plat applicants from knowing what matters they would need to refute in order to gain commission approval. Without knowing what information they must show in order to gain commission approval, plat applicants would not be able to obtain a fair and impartial hearing. Therefore, planning commissions may consider only evidence presented for the record which bears on the grounds authorized by statute for plat approval or disapproval. W.Va. Code § 8–24–30.

### III.

Although the Commission did consider factors not authorized by law, it also based its denial on matters expressly authorized by statute. Therefore, it is necessary to determine whether these legitimate considerations justify the Commission's rejection of the proposed subdivision. Prior to examining the evidence, however, we must determine the applicable scope of our review in this case.

---

11. The statute provides:

A municipal planning commission shall consist of not less than five nor more than fifteen individuals, the exact number to be specified in the ordinance creating such commission, all of whom shall be freeholders and residents of the municipality, who shall be qualified by knowledge and experience in matters pertaining to the development of the municipality, who shall include representatives of business, industry and labor, and who shall be nominated by the administrative authority and confirmed by the governing body of the municipality or appointed by the governing body where the administrative authority and governing body are the same. At least three fifths of all of the members must have been residents of the municipality for at least ten years prior to nomination and confirmation or appointment. One member of the commission shall also be a member of the governing body of the municipality and one member shall also be a member of the administrative department of the municipality, the term of these two members to be coextensive with the term of office to which they have been elected or appointed, unless the governing body and administrative authority of the municipality at the first regular meeting of the commission each year designate others to serve as the municipality's representatives. The remaining members of the commission first selected shall serve respectively for terms of one year, two years and three years, divided equally or as nearly equally as possible between these terms. Thereafter, members shall be selected for terms of three years each. Vacancies shall be filled for the unexpired term only, in the same manner as original selections are made. Members of the commission shall serve without compensation, but shall be reimbursed for all reasonable and necessary expenses actually incurred in the performance of their official duties.

In reaching its decision, the lower court concluded that the Commission had made no errors of law and that the evidence supported the denial of plat approval. Our review is likewise limited. It is important, however, to explore the differences in this case and one which involves enactment or application of zoning ordinances.

The Commission is charged with overseeing community development. In Fairmont, this entity handles both zoning and planning. Much of the argument in this case has treated the decision as a zoning matter. However, planning and zoning are not identical, as we pointed out in *Singer v. Davenport, supra*. "Certainly, there is a distinction between regulating the manner in which a subdivision can be constructed and regulating where land can be devoted to subdivision use. The former is the province of a planning commission, while the latter is exclusively the province of a zoning commission." 164 W.Va. at 672, 264 S.E.2d at 642. This distinction is also contained in the statute which authorizes formation of planning commissions. Local governing bodies may establish such agencies to "promote the orderly development of its governmental units and its environs." W.Va.Code § 8-24-1. Local planning agencies may "improve the health, safety, convenience and welfare of their citizens" and may "plan for future development of their communities." *Id.* To accomplish that end, planning units must carefully plan highway systems and see "that new community centers grow only with adequate highway, utility, health, educational and recreational facilities ...." *Id.* Planning commissions must take into account the future needs of agriculture, industry and business and must see that "residential areas provide healthy surroundings for family life ...." *Id.*

The city urges that we apply the "fairly debatable" standard of review to this case. Under that approach, "if the decision of the zoning authorities is *fairly debatable* the courts will not interfere with such decisions." *Anderson v. City of Wheeling*, 150 W.Va. 689, 698, 149 S.E.2d 243, 249 (1966). Under the fairly debatable standard courts will not substitute their judg-ment for that of zoning authorities as long as such decisions are supported by the evidence.

■ This case, however, does not involve zoning. When the Commission denied Gold's plat request, it acted in a planning rather than a zoning capacity. Therefore, the "fairly debatable" rule does not apply to this case. Planning commission decisions are administrative rather than legislative actions. *Boulder Corp. v. Vann*, 345 So.2d 272 (Ala.1977); *RK Development Corp. v. City of Norwalk*, 156 Conn. 369, 242 A.2d 781 (1968); cf. *State ex rel. Ammerman v. City of Philippi*, 136 W.Va. 120, 65 S.E.2d 713 (1951) (city council's denial of building permit must be governed by reasonable rules).

■ Given the administrative nature of this action, the scope of review should not be more than that applied in *Wolfe v. Forbes*, 159 W.Va. 34, 217 S.E.2d 899 (1975). Although that case dealt with a decision by a zoning appeals board, we believe that the scope of review applied in that case is applicable here. Therefore, in a case involving a planning commission decision, "this Court may disturb a decision where the board has applied an erroneous principle of law, was plainly wrong in its factual findings, or acted beyond its jurisdiction." *Id.*, 159 W.Va. at 45, 217 S.E.2d at 906.

■ The commission clearly erred in its denial after the improper considerations previously discussed are removed. Elimination of these factors leaves only adverse traffic impact as justification for plat denial. The evidence introduced by both Gold and the intervenors refutes this finding. The evidence shows that the accident rate on U.S. Route 250 is below the state average for such roads. Moreover, the developer provided expert testimony regarding its plan to construct acceleration and deceleration lanes along the highway leading to the development. The commission members' own experiences are not sufficient to overcome the evidence presented by Gold.

■ Additionally, the city does not contest the fact that the comprehensive plan

called for multi-family development in the Watson Hill area. The proposed use of the property complied with the zoning ordinance enacted by the City of Fairmont pursuant to the comprehensive plan. The Commission admitted at the second public hearing that the plat complied with technical requirements contained in ordinance 425. From the foregoing we hold that the denial of the plat submitted by Gold is not supported by the evidence.

## IV.

■ In conclusion, we reverse the Commission's denial of plat approval. The Commission improperly considered several factors. The record indicates that although the city and the Commission listed various reasons for its denial, perhaps the real reason was the fact that low-income persons were going to live in the publicly-funded development.[12] By attempting to use the planning commission as a vehicle to "plan" out persons of low income, the Commission's action parallels cases elsewhere involving exclusionary zoning. *See generally* 1 P. Rohan, *Zoning and Land Use Controls*, chapters 2–3 (1982). Such action is no more legal when taken by a planning commission than when implemented via a zoning ordinance.

■ As noted previously, this case presents the reverse of the situation found in *Singer.* There, the Commission attempted to use the planning commission's plat approval power as *de facto* zoning. The economic status of prospective inhabitants who will occupy the proposed subdivision is no more a legitimate consideration than would be the occupants' sex, race, creed, color, or national origin. Just as the planning commission in *Singer* could not use a planning decision to implement zoning, a planning commission may not use its authority to effectively rezone property by denying approval of a subdivision plat.

The Commission's action was an attempt to prevent multi-family development in an area zoned for that purpose because the subdivision would not be in "harmonious development" with nearby single-family residences. While that phrase might justify a planning commission requiring a development's architectural style to be in conformance with the surrounding neighborhood, such as colonial architecture in colonial Williamsburg, the law does not permit planning to be used as an economic barrier.

■ The separation of powers between a planning commission and a zoning commission is not always clear. The freedom of individuals to live where they want and with whom they desire is not the only consideration in this case. While the intervenors seek to prevent their neighborhood from changing, they also seek to prevent a property owner from using his property in a reasonable manner. Although the concerns expressed by the intervenors may be legitimate, the fact remains that Gold complied with every statute and ordinance enacted by the state and the city. When an applicant meets all requirements, plat approval is a ministerial act and a planning commission has no discretion in approving the submitted application. *Knutson v. State,* 239 Ind. 656, 157 N.E.2d 469, *aff'd on rehearing,* 239 Ind. 656, 160 N.E.2d 200 (1959). Since the Commission found that Gold has complied with all technical requirements of the statute and ordinance, it is entitled to have the plat approved as submitted.

Reversed and remanded.

12. The following exchange summarizes the Commission's attitude.

MEMBER SUTTON: Now, does a low-income housing or a housing development of this type conform to the surrounding development?
CHAIRMAN PYLES: That's the question, I would imagine.

MEMBER SUTTON: Well, I'm sitting here in fear, because I figure if I say what I want to say I'll have a law suit on my hands. I'm going to say—I move it does not conform to the surrounding development; it is definitely not harmonious with the surrounding development, and I say let's deny it.