This case involves the proposed resubdivision of a lot located in the old Springhill area of Mobile. The lot is owned by Mrs. Tula Fearn; suit was brought by her son-in-law, Arthur Smith, III, who is purchaser of the lot under contract. Mr. Smith proposes to divide the property into three irregular shaped lots on which townhouses would be built. The dimensions of the lots would exceed the minimum area requirements set out in the Planning Commission regulations.
The surrounding neighborhood is an old one, with many large lots, narrow, winding roads, abundant shrubbery and trees. In recent years, some of the original lots have been subdivided, much in the manner here contemplated. The extent to which such development has taken place is a matter of dispute.
The proposed subdivision, named Arden Court, was first presented to the Planning Commission on November 3, 1977. After the statutorily required public hearing was held, approval was denied on the grounds that "the lots would be out of character with the other lots in the area." Minutes of the public hearings reveal substantial neighborhood opposition to the proposed plans. Concern was voiced over the increase in traffic that would result from subdivision and the proximity of the lots to a public grammar school. Neighbors also objected that the proposed lots would be out of character with the neighborhood. Application for approval was twice renewed, the plat having undergone minor revisions in the interim, and each time was denied on the identical grounds.
Following this triple rebuff, Smith filed a petition for a writ of mandamus in the Circuit Court of Mobile County, asking that the Mobile City Planning Commission be compelled to issue a certificate of approval for Arden Court. Leave to intervene was granted Ruby Twitty, an adjoining landowner, and a hearing was held, following which the trial court denied the petition and dismissed the case with prejudice. This appeal followed.
Appellant contends that the criteria utilized by the Planning Commission in turning down his proposal were not within its statutory grant of authority and were contrary to the regulations adopted by the Planning Commission itself; further, that the Commission's action denied him his *Page 307 
rights under the Due Process and Equal Protection Clauses of the United States Constitution, and his rights under the Constitution of this State. He also alleges a failure on the part of the Commission to act within the time and manner prescribed by law.
The City argues that disapproval of subdivision plans on the grounds that they would be "out of character with other lots in the area" is authorized by Section V(D)(1) of the Planning Commission Subdivision Regulations. That section provides that:
 "The size, width, depth, shape and orientation of lots and the minimum building setback lines shall be appropriate to the location of the subdivision and the type of development and use contemplated. Every lot shall contain a suitable building site."
The City also contends that the Planning Commission is granted substantial discretion by the enabling statute in approving or disapproving subdivisions, and may properly take into consideration such factors as neighborhood opinion and aesthetics.
We agree with appellant that the Planning Commission's action in disapproving Arden Court exceeded the authority vested in the Commission by statute.
Although Alabama's subdivision control statute, Code 1975, §11-52-30, et seq., has but infrequently been the subject of litigation, it has been held that "The authority of the Planning Commission to exercise control over subdivision of lands within the municipality is derived from the legislature. [Citation Omitted] It is authorized to adopt regulations not inconsistent with the statutes. . . ." Boulder Corp. v. Vann,345 So.2d 272, 275 (Ala. 1977).
Since the Planning Commission's power to regulate subdivisions is derived from the statute, it follows that it cannot use that power to further goals not designated by that statute. As the Court of Appeals of Maryland stated in a case similar to this one, ". . . Municipal agencies can exercise only so much of the police power as may be expressly granted or necessarily implied. . . . The power delegated to the Commission to formulate and publish rules and regulations is not a blank check; it cannot make ad hoc decisions which deny to a citizen the right to use his land lawfully." BaltimorePlanning Com'n v. Victor Development Co., 261 Md. 387,275 A.2d 478, 481 (1971). Statutes or ordinances which impose restrictions on the use of private property are strictly construed and their scope cannot be extended to include limitations not therein included or prescribed. E.C. Yokley,The Law of Subdivisions, § 53 (1963 and Supp. 1979), citingKnutson v. State, 239 Ind. 656, 157 N.E.2d 469 (1959), affirmed on rehearing, 160 N.E.2d 200 (1959). See, also: Boxell v.Planning Com'n of City of Maumee, 10 Ohio App.2d 25,225 N.E.2d 610 (1967).
Once a planning commission has properly exercised its authority in drafting ordinances regulating subdivision development, it is bound by those ordinances. In Boulder Corp.v. Vann, supra at 275, this court held that ". . . In exercising its function approving or disapproving any particular subdivision plat, the Commission acts in an administrative capacity, and is bound by any limitations on its authority contained in the legislation authorizing it to act,as well as any restrictions contained in its own regulations." (Emphasis Added) Yokley, supra, § 52, states that a planning commission has ". . . no discretion or choice but to approve a subdivision which conforms to the regulations." Courts of other jurisdictions have agreed. The Supreme Judicial Court of Massachusetts stated, in interpreting that state's subdivision control law, that there is ". . . no indication that planning boards were to have freedom to disapprove plans which comply with applicable standards merely because the board feels general public considerations make such actions desirable . . ." Pieper v. Planning Board of Southborough, 340 Mass. 157,163 N.E.2d 14, 18 (1959). Similarly in Baltimore Planning Com'n v.Victor Development Co., supra 275 A.2d at 482, it was noted that ". . . Consistently it has been held that, unless the submitted *Page 308 
plan clearly fails to comply with the appropriate legislative regulations, the board in question must grant its approval. . . ." Further, ". . . Mandamus will lie to compel the approval of a subdivision plan where a council, vested with the authority to approve, gives reasons for its refusal to approve that are unrelated to the question of conformance of the plan with applicable ordinances." Yokley, supra, § 53, citing Kling v.City Council of Newport Beach, 155 Cal.App.2d 309, 317 P.2d 708
(1957). In that case, approval had been denied by the planning commission because the proposed subdivision, though in compliance with city ordinances, was to be located in a scenic neighborhood with many large lots, and surrounding landowners objected that the development would be aesthetically discordant.
Mandamus is also appropriate where all applicable ordinances have been complied with, and the proposal is denied because adjacent property owners object. ". . . Neighboring property owners do not possess the right to impose, for their own special benefit, restrictions upon the lawful use of a tract of land. . . ." Yokley, supra, § 54.
Regulations enacted by the planning commission must be of general application and set forth sufficient standards to give applicants notice of what is required of them. Powell, Law ofReal Property, Chapter 79, "Subdivision Control," 866. As stated by the Court of Appeals of Alabama:
 "`Municipal ordinances, placing restrictions upon lawful conduct, or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct of business, and must admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions, and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who will so comply.'" Longshore v. City of Montgomery, 22 Ala. App. 620, 622, 119 So. 599, 600 (1928).
Longshore held invalid a zoning ordinance which required property owners to secure the consent of their neighbors before a permit to build would be issued. See, also: Swann v. City ofGraysville, 367 So.2d 952, 954 (Ala. 1979), wherein it was held that a municipality's ". . . power of control and regulation . . . may not be exercised in an arbitrary or discriminatory manner. To apply . . . [an] ordinance dissimilarly to those similarly situated is a denial of equal protection of law. . . ."
The Supreme Judicial Court of Massachusetts has likewise stated:
 ". . . The subdivision control law attaches such importance to planning board regulations as to indicate to us that they should be comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them. Without such regulations, the purposes of the law may easily be frustrated.
 ". . . [These] regulations deal with the matters here in issue in terms . . . too vague and general to inform owners about the standards which they must meet. . . ." (Emphasis Added) Castle Estates, Inc. v. Park Planning Board of Medfield, 344 Mass. 329, 182 N.E.2d 540, 545, 545 (1962).
Similarly, Yokley, supra, § 54 (Supp. 1979), states:
 "Where a subdivision plan is disapproved, valid reasons must be given for such action. Where reasons for disapproving a subdivision plan, or a development plan, are vague and uncertain in meaning, and provide no information to a developer to enable him to know wherein the plan failed to meet the requirements of the regulations, it has been held that such action operates to deprive a developer of his property without due process of law. If a plan fails in any respect to conform to the regulations it becomes the duty and obligation of the approving authority to so indicate. A city council, vested with authority to approve a plan, may not disregard the regulations and *Page 309 
substitute its pure discretion for a discretion controlled by fixed standards applying to all cases of a like nature." Citing RK Dev. Corp. v. Norwalk, 156 Conn. 369, 242 A.2d 781 (1968).
The Planning Commission's authority to adopt regulations governing the subdivision of land is set out in Code 1975, §11-52-31. The Commission is empowered to adopt regulations which provide:
 ". . . for the proper arrangement of streets in relation to other existing or planned streets and to the master plan, for adequate and convenient open spaces for traffic, utilities, access of fire-fighting apparatus, recreation, light and air and for the avoidance of congestion of population, including minimum width and area of lots. Such regulations may include provisions as to the extent to which streets and other ways shall be graded and improved and to which water and sewer and other utility mains, piping or other facilities shall be installed as a condition precedent to the approval of the plat. . . ." (§ 11-52-31, supra)
Pursuant to this authorization, the Mobile City Planning Commission has enacted subdivision control ordinances. Section V (D) of those ordinances sets out the requirements which individual lots in a subdivision must meet. In addition to specific criteria regarding minimum lot size, maximum depth, position of lots in relation to streets, etc., the requirements of Section V (D)(1) are set out, supra.
To construe the provisions of Section V (D)(1), as appellees urge, as being synonymous with "out of character with other lots in the area" would be to ignore the specific criteria which follow it and vest a discretion in the Planning Commission which is unguided by uniform standards, and capable of arbitrary application. This we decline to do. If, as the City contends, the statute allows the Planning Commission to take into account aesthetic factors, the exercise of that discretion must be guided and limited by clearly drawn standards which can be uniformly applied and which give reasonable notice to applicants of requirements with which they must comply to obtain approval.
The Planning Commission's denial of approval of Arden Court on the grounds that it was "out of character with other lots in the area" was unrelated to its conformance with the Planning Commission's own regulations and exceeded its statutory grant of power. In such a case, mandamus will issue to require the approval of the subdivision. Yokley, supra, § 53. See, also, cases cited above. In general, a plaintiff must demonstrate complete compliance with all requirements in connection with his or her plan before he or she will be entitled to a writ of mandamus. Yokley, supra (Supp. 1979, § 53). No contention was made by the Planning Commission that Arthur Smith's plan is in violation of any ordinances other than Section V (D)(1). The plan was presented to the Commission on three separate occasions and three public hearings were held. After each such hearing, the application was denied on the sole ground that the lots would be "out of character."
The judgment of the trial court is reversed and the cause remanded for the issuance of the writ of mandamus directing the Planning Commission to approve the appellant's subdivision plan.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur. *Page 310