**COPPER FIELD APARTMENTS and Flournoy Development Company, Plaintiffs,**

v.

**CITY OF MONTGOMERY, et al., Defendants.**

**No. CV–96–A–469–N.**

United States District Court, M.D. Alabama, Northern Division.

July 26, 1996.

---

7. *See supra* note 4.

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.*

Clement C. Torbert, Jr., Peter S. Fruin, Robert R. Sexton, Maynard, Cooper & Gale, P.C., Birmingham, AL, for plaintiffs.

Thomas C. Tankersley, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, George B. Azar, Elizabeth C. Wible, Azar & Azar, Montgomery, AL, F. Tim McCollum, City Attorney, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

On March 15, 1996, the Copper Field Apartments ("Copper Field") and Flournoy Development Company ("Flournoy") filed suit against the City of Montgomery, the Montgomery City Planning Commission ("Planning Commission"), the Mayor of Montgomery, and the City Council members. The plaintiffs contend that the Planning Commission violated both Alabama law and Planning Commission rules and regulations when they denied the Plaintiffs' Revised Site Plan. They seek an injunction requiring approval of the Plan. Plaintiffs are resident citizens of Georgia, and jurisdiction is proper under 28 U.S.C.A. § 1332 due to the complete diversity of the parties.

On June 26, 1996, a bench trial was held. The court heard testimony from several Commissioners and others. Transcripts of two hearings before the Commission, together with various maps and other documents, were submitted and have now been reviewed. Having considered all the evidence, the court finds that judgment is appropriate in favor of the defendants.[1]

---

1. The defendants filed a post trial memorandum in support of their motion for a judgment as a matter of law. The court finds that there was sufficient evidence to deny that motion and reach the matter on its merits. The defendants' motion, therefore, is due to be denied.

## I. FACTS

On August 2, 1995, Flournoy submitted to the Planning Commission a proposal to develop an apartment complex on approximately 17 acres located off of Bell Road in Montgomery, Alabama. On September 14, 1995, the Planning Commission voted to deny the proposed plan. The Planning Commission cited traffic safety concerns (congestion) as its reason for rejecting the proposal.[2]

Sometime after this September meeting, Flournoy purchased an additional 15 acres (approximately) adjacent to the land involved in the September proposal. Flournoy then joined with Copper Field as general partners to submit another proposal to the Planning Commission as to the same tract of land.[3] In order to address the Planning Commission's concern about traffic congestion, the plaintiffs this time submitted a traffic report by Robert L. Wolfe, a traffic engineer. The report indicated that this proposed apartment complex would not significantly impact the traffic conditions on Bell Road. On February 22, 1996, a Planning Commission hearing was held to consider the new proposal. At this hearing, the plaintiffs provided the Planning Commission members with Mr. Wolfe's traffic analysis, and Mr. Wolfe addressed the Planning Commission to explain it. After the hearing, the Planning Commission again denied approval citing traffic concerns.[4] The plaintiffs then filed this suit to compel the Planning Commission to approve the plan. The plaintiffs contend that the Commission's decision to deny approval of the plan was arbitrary and capricious, and that the stated concern, traffic congestion, was not the true reason for the denial.

Rather, plaintiffs contend that the denial was a reaction to the strong opposition stated by local residents to the (low income) housing project and what the project would do to their property values.

## II. STANDARD

■ A court's review of a city planning commission's action is limited. *Noojin v. Mobile City Planning Commission,* 480 So.2d 587, 588 (Ala.Civ.App.1985). When a commission denies approval for a proposed land use, that decision should not be invalidated unless it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Noojin,* 480 So.2d at 588. The court should, therefore, accord great deference to the decisions of the commission.

## III. DISCUSSION

There are really two denials at issue in this case. First, the plaintiffs contend that the Planning Commission improperly denied their September 1995 proposal. Second, the plaintiffs contend that, even if the earlier denial was appropriate, the February 1996 denial was not.

### A. September 14, 1995 Denial

■ At the September hearing, the Planning Commission cited traffic safety concerns as the reason for denying approval of Flournoy's development plan. Traffic safety is a valid concern, and the Commissioners are entitled to consider the potential impact a proposal may have on neighboring streets when determining whether to approve a de-

---

2. ALA.CODE § 11–52–32 (1985 Repl.Vol.) requires a planning commission to state in its record within thirty days of the date of submission of the plat its grounds for disapproving the plat, and, if it is not so stated in such records within that period of time, a certificate of approval shall be issued by the planning commission on demand.

3. Although the plaintiffs now owned more land, the proposal involved development of only the original 17 acres.

4. After the second denial, the Planning Commission also cited additional reasons for denying the plan. Among the new reasons were school over-

crowding, safety hazards, and housing that is not in architectural harmony with the surrounding neighborhoods. The plaintiffs contend that this was merely a re-submittal of an earlier proposal and that the Planning Commission, therefore, can not raise additional reasons for denying a plan after thirty days have passed. The plaintiffs also contend the additional reasons are improper, even if timely raised. The court need not address the propriety of the additional reasons, however, because the concern over traffic safety was a permissible consideration, and, as shall be discussed later, the Commission's decision regarding traffic safety was not arbitrary and capricious.

velopment plan;[5] therefore, as long as their concern about traffic was not arbitrary and capricious, the decision to deny approval on that basis should not be invalidated. It is undisputed that at the time of the September hearing, there was no traffic survey or analysis available to the Planning Commission. There was, however, sufficient evidence of current and potential traffic problems (primarily provided by the testimony of area residents) to support the Commission's decision to deny approval.

### B.  February 22, 1996 Denial

■ At the February 22 meeting, the Planning Commission again cited traffic concerns as a reason for denial.[6] As stated earlier, traffic safety is a valid consideration and as long as the Commissioner's traffic concerns were not arbitrary and capricious, the decision to deny approval should not be invalidated.

The plaintiffs contend that the decision was arbitrary and capricious. To support this position, the plaintiffs point to the traffic analysis provided to the commission by R.L. Wolfe Associates. Robert Wolfe reported to the Commission that the proposed apartments would have no significant traffic impact on the area. Mr. Wolfe also indicated that Montgomery's traffic engineer had no objections to his findings. The Commissioners, however, posed some serious questions to Mr. Wolfe, and they found his answers unsatisfactory.

When asked about the potential traffic impact at Bell Road and Vaughn Road, Mr. Wolfe conceded that he did not perform an analysis of the traffic impact at that intersection. When asked about the potential traffic impact at Bell Road and the Troy Highway, Mr. Wolfe again conceded that no such analysis was made. The lack of analysis at these two intersections caused the Commissioners a great deal of concern because the proposed apartment complex would empty out onto Old Post Lane, which is a cul-de-sac. That traffic, therefore, must go directly to Bell Road. The first two major outlets from Bell Road are the Troy Highway and Vaughn Road. Although Vaughn and the Troy Highway are several miles apart, almost every road leading off of Bell Road between Vaughn and the Troy Highway is a cul-de-sac.[7] This means that almost *all* traffic coming and going from any of those roads must travel to one or the other before dispersing.

In response to the Commission's concern, Mr. Wolfe testified that a study at Vaughn Road and Bell Road was unnecessary because traffic would dissipate. Several members of the Commission, however, testified that they questioned whether that made sense because, as just discussed, between Old Post Road (where the proposed apartments would empty onto Bell Road) and Vaughn Road there is not a viable outlet.

Mr. Wolfe was also asked whether his analysis accounted for future developments already planned and approved in the area. The Commissioners considered this crucial because many of the subdivisions off of Bell Road have already begun construction on new houses, or at least have had plans approved to begin soon. Additionally, several churches and a school have been approved to be built in the area. Mr. Wolfe conceded that, in making his report, he did not consider how many houses, churches, schools, businesses, etc. had already been approved to be built in the area.

The plaintiffs contend that it is "an absurd idea to suggest that a developer of land would be required to perform a traffic impact analysis and to take into consideration what

---

5. Section VII, subsection C, paragraph 2(h) of the Subdivision Regulations for the City of Montgomery, authorizes the Planning Commission to account for the impact of traffic on neighboring streets when considering whether to approve a development plan.

6. As discussed *supra* in note 3, the Commissioners also cited some additional reasons for the denial. The plaintiffs contend that the additional reasons should not be considered because they came more than thirty days after the original denial. Because the court finds the traffic concerns valid, however, it is unnecessary to determine whether the committee could provide additional reasons at the February hearing which were not raised at the September hearing.

7. There are two roads which lead into a subdivision. If cars cut through the subdivision, they could reach Vaughn Road. This is not, however, an easy outlet for cars getting off Bell Road.

future development might be." (Plaintiffs' Post Trial Brief, p. 35). While the court may agree that it is unnecessary for builders to foresee all remote contingencies, it is hardly absurd to expect them to consider other projects which are already underway or which are just about to begin. It is completely appropriate for the Commission to consider what it has already approved when determining what else to approve.

The plaintiffs also contend that the Planning Commission is not allowed *any* discretion. Accordingly, plaintiffs contend, the Planning Commission was required to accept their expert's opinion or else present an expert of its own to contradict him. In support of that position, the plaintiffs cite *Noojin v. Mobile City Planning Commission*, 480 So.2d 587, 589 (Ala.Civ.App.1985). The court in *Noojin* overturned the Mobile Planning Commission's denial of a proposal based on the strength of the developer's expert, as against the testimony of local residents. The plaintiffs contend that *Noojin* is indistinguishable from the present case. The court disagrees.

In *Noojin*, local residents complained to the Planning Commission that their property values would decrease if townhouses were built in a particular subdivision in Mobile. The developer, on the other hand, presented an expert witness, a real estate appraiser, who testified that there would not be a devaluing effect. The residents were unable to point to any evidence which supported their fear that property values would decrease. More important, neither the residents nor the Commission pointed to any weakness in the expert appraiser's opinions.

While the court in *Noojin* was unpersuaded by the residents' testimony, the court recognized that their testimony should be heard and considered. *Noojin*, 480 So.2d at 590 ("the feelings of these neighbors are certainly entitled to consideration"). The *Noojin* court held only that, *under the circumstances of that case*, there was no credible evidence that the townhouse project would have a devaluing effect. *Id.* The present case, however, is quite different. The residents testified not only to their fears, but also to the traffic problems which cur-

rently exist. This testimony, as opposed to that in *Noojin*, concerned hard facts that were observed by the residents. Additionally, as opposed to *Noojin*, once the Planning Commission heard from the residents, the Commissioners raised serious questions as to the validity of the expert's report.

In a related argument, the plaintiffs contend that the only right the Planning Commission had was to require a traffic impact analysis. (Plaintiffs' Post Trial Brief, p. 30). As support for this position, they cite *Smith v. City of Mobile*, 374 So.2d 305 (Ala.1979). In *Smith*, however, the court addressed due process concerns with justifications for denial which were "vague and uncertain." *Smith*, 374 So.2d at 308. Specifically, the court held that a simple denial on the basis of the project being "out of character with other lots in the area" was inappropriate because it was "unguided by uniform standards and was capable of arbitrary application." *Id.* Again, the court's holding was specific to the particular facts. Traffic problems are readily identifiable and are considerably less capable of arbitrary application. As stated before, the Planning Commission is not required to blindly accept the plaintiffs' traffic analysis merely because it was prepared by a traffic engineer.

In the present case, it is completely reasonable for the Commissioners to question whether Mr. Wolfe was correct that traffic impact analysis was unnecessary at the two major intersections of Bell Road/Vaughn Road and Bell Road/Troy Highway. This is especially true in light of the limited number of outlets from Bell Road between the Troy Highway and Vaughn Road. Furthermore, in an area of such dynamic growth, it is reasonable for the Commissioners to be wary of a traffic analysis that does not consider the impact of future developments already planned and approved for the area. The evidence showed that there are already numerous lots in approved subdivisions in the area with no houses on them which will add significantly to the traffic on Bell Road when houses are built. In short, it was not arbitrary and capricious for the Commissioners to challenge Mr. Wolfe's findings, nor to deny the plaintiffs' proposal.

■ A particular issue that needs to be addressed is the plaintiffs' contention that the Commission's explanation of traffic congestion was merely a pretext to the true motive—that the residents did not want this type of low income housing. The plaintiffs are correct that many of the opinions expressed by the interested citizens who showed up at both the September and February meetings evidenced animosity toward the project and its builder. The plaintiffs are also correct that much of the opposition from the local residents related not to traffic, but to economic concerns with the project, i.e. depreciation in their own property values, difficulty in selling homes in the area, etc. Nevertheless, without addressing each issue specifically, the court is satisfied that the Commission's traffic safety concerns were valid. While the testimony of several Commissioners indicates a certain sympathy for the residents' position, it does not indicate that the stated traffic concerns were pretextual, nor does it indicate that their decision to deny based on traffic congestion was arbitrary and capricious.[8]

## IV. CONCLUSION

■ The impact which approval of a proposed new site plan will have on the traffic in an area is a proper consideration for a Planning Commission. The Commission is under no legal duty to approve a new project which will greatly increase traffic problems for existing residents and future residents of existing approved subdivisions, if concern over that effect is legitimate and not a pretext for an illegal reason.

There was ample testimony and evidence before the Commission, both in September and in February, that traffic is a serious concern in the Bell Road area. Though the plaintiffs presented evidence to the Commissioners in February that traffic would not be significantly impacted, the court cannot find that the Commissioners' criticisms or concerns with the traffic analysis were unreason-

able, nor that they were arbitrary and capricious. Judgment, therefore, is due to be entered in favor of the defendants.

---

8. The plaintiffs filed a motion to supplement the record with evidence of certain development proposals which the Planning Commission granted after denying the plaintiffs' proposal. The plaintiffs contend these grants show that traffic was not a primary concern. Without ruling on the propriety of considering the supplemental evidence, the court notes that the supplemental information does not add to the plaintiffs' case. The plans are either considerably smaller or in locations sufficiently different from the plaintiffs' proposed location.