Rel: December 8, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0017
_____

## T Investments, LLC, and FHM Company, LLLP

## v.

## City of Montgomery Planning Commission and City of Montgomery


### Appeal from Montgomery Circuit Court
### (CV-21-901370)

COOK, Justice.

T Investments, LLC, and FHM Company, LLLP,[1] challenge the Montgomery Circuit Court's judgment denying their petition for a writ of mandamus directing the City of Montgomery Planning Commission ("the Commission") to conditionally approve their preliminary plat for a proposed development within the geographical limits of the City of Montgomery ("the City"). Because we conclude that the Commission failed to record a legally sufficient reason for denying conditional approval of the preliminary plat, we reverse the judgment and remand the case with instructions for the circuit court to grant the petition for the writ of mandamus.

<u>Facts and Procedural History</u>

FHM owns approximately 85 acres of undeveloped land in the City's County Downs neighborhood ("the subject property"). County Downs was originally developed in 1974. From the beginning, the neighborhood has continuously been zoned as "R-75-S," a designation that restricts

---

[1]Although the pleadings and other filings identify this entity as FHM Company, LLP, materials in the record, including the affidavit of James B. Marshall, Jr., a partner in this entity, reflect that the entity's actual name is FHM Company, LLLP, which is also how this entity is listed in the Alabama Secretary of State's online business-records database.

development to single-family residential dwellings on lots with at least 75 feet of road frontage. Since 1974, different portions of County Downs have been systematically developed at different times. Notably, although County Downs is zoned "R-75-S," the developed lots adjacent to the subject property generally have between 85 and 100 feet of road frontage.

As County Downs has expanded, proposed plats contemplating the development of unimproved land within the neighborhood have been submitted to the Commission for approval. In January 2002, FHM submitted a preliminary plat for the subject property ("the 2002 preliminary plat") to the Commission. The 2002 preliminary plat proposed the development of 327 single-family, residential homes on lots that were approximately 100 feet wide. Although the Commission conditionally approved the 2002 preliminary plat, that plat was never submitted to the Commission for final approval, and the subject property remained undeveloped.

In 2021, FHM entered into an agreement with T Investments to develop the subject property. As part of the agreement, FHM authorized T Investments to act as its agent in, among other things, seeking the Commission's approval of a proposed development on the subject

3

property. The City's subdivision regulations require developers to comply with a two-stage process for plat approval. First, a subdivider, which is defined in § IX.C of the City's subdivision regulations as "[a]ny person or corporation or duly authorized agent who undertakes the subdivision of [the] lands" at issue, must seek the Commission's conditional approval of a preliminary plat. See § II.A-C of the City's Subdivision Regulations. To do so, the subdivider must submit the "preliminary plat together with other supplementary material as deemed necessary by the … Commission and specified in Section III" of the subdivision regulations. Id., § II.B.1.

Conditional approval of a preliminary plat by the Commission does "not constitute approval of the final plat," but, rather, is

> "deemed an expression of approval of the layout submitted on the preliminary plat as a guide to the preparation of the final plat, which will be submitted for the approval of the … Commission, and for recording upon the fulfillment of the requirements of [the subdivision] regulations and the conditions of the conditional approval, if any."

Id., § II.B.5. If the Commission grants conditional approval, and after the subdivider satisfies the requirements set forth in the subdivision regulations and any conditions imposed by the Commission, the

4

subdivider then submits a final plat for approval and recording. See id., § II.D.

T Investments hired Flowers & White Engineering to create a preliminary plat for the subject property that conformed with the requirements for "R-75-S" zoning districts. The preliminary plat proposed subdividing the subject property into 244 lots for single-family, residential use, with typical lot sizes that were 75 feet wide and 135 feet deep.

In October 2021, the preliminary plat was submitted to the Commission for conditional approval. City staff noted that the preliminary plat complied with the City's zoning ordinance and subdivision regulations. Moreover, the City's engineering, traffic, fire, water, and sewer departments, along with the Montgomery County Health Department, expressed no objections to the preliminary plat.

Consideration of the preliminary plat was initially set for a hearing at the Commission's October 28, 2021, meeting. At that meeting, however, the Commission urged representatives of T Investments to meet with certain residents of County Downs ("the residents") to discuss their concerns regarding the preliminary plat. As a result, T Investments

voluntarily delayed its request for conditional approval of the preliminary plat until the Commission's next meeting on November 18, 2021, and it arranged for its representatives to meet with the residents on November 9, 2021.

Representatives from both T Investments and Flowers & White met with the residents on November 9, 2021. The primary concern expressed by the residents at the meeting was the proposed width of the lots in the preliminary plat. Some of the residents were concerned that the proposed smaller lot sizes in the preliminary plat would cripple the value of existing homes in County Downs. Although the residents acknowledged that the "R-75-S" zoning designation required that each lot have only 75 feet of road frontage, they nevertheless asked that the preliminary plat be amended to propose lots with at least 100 feet of road frontage. T Investments, however, would not agree to the residents' request, and no resolution of this disagreement was reached at the meeting.

Consideration of the preliminary plat was reset for a hearing at the Commission's November 18, 2021, meeting. All nine commissioners, along with several members of the City's land-use staff, were present at the meeting. During the meeting, the Commission and City officials

discussed, among other things, the connectivity of the street system in County Downs, the neighborhood's sewage infrastructure, whether a traffic study was required at the conditional-approval stage, and whether the preliminary plat submitted by T Investments could supersede the 2002 preliminary plat previously conditionally approved by the Commission. Kenneth White, the Flowers & White engineer who had prepared the preliminary plat, asserted that he had met with the City's traffic engineer before submitting the preliminary plat to the Commission and that the traffic engineer had not indicated that a traffic study was required. According to White, the City's zoning ordinance -- rather than the 2002 preliminary plat -- controlled the width of the proposed lots in the preliminary plat. White further explained that, as development of the subject property pursuant to preliminary plat proceeded, there would be greater street connectivity within County Downs, which would help improve the quality of emergency and other municipal services to the neighborhood.

Several of the residents also appeared at the meeting to object to the proposed development of the subject property. The Commission heard from some of the residents, who voiced concerns about increased traffic,

exacerbation of existing drainage issues, and the fact that the 2002 preliminary plat called for lots with 100 feet of road frontage, rather than the 75-feet-per-lot of road frontage proposed by the preliminary plat. One of the residents, attorney Richard Dean, submitted a letter to the Commission on the day of the meeting, specifically asking it to deny conditional approval of the preliminary plat for eight enumerated reasons.[2]

At the meeting, Dean explained that, in his view, the City's subdivision regulations required subdividers "to have a traffic study ahead of time before [the Commission] approve[d] a plat that has a subdivision of 50 houses or more." Dean argued that some neighborhood residents had relied on the 2002 preliminary plat when purchasing homes in County Downs. Dean also provided the Commission with his overview of the legal and regulatory framework governing the Commission's review of the preliminary plat:

---

[2]The Commission took Dean's letter under advisement during the meeting. Dean's letter noted that the Commission's bylaws and the relevant statute required that it state in its records a valid reason for denying conditional approval of a preliminary plat. See § 11-52-32(a), Ala. Code 1975, and Smith v. City of Mobile, 374 So. 2d 305, 308 (Ala. 1979).

"MR. DEAN: I'll hurry. I just want to explain, very briefly, the law …. You are supposed to vote on this. You can vote it up or down. The statute says, the ground of disapproval shall be stated on the record if you vote it down.

"You have to state a reason for it to be valid. Secondly, the case law says, valid reason. There's no definition of valid reason. But what the cases all come down on is health, morals, public safety, welfare of the community, stuff like that.

"I have given you a memo with eight good, valid reasons, including the fact the plat's already out there that says something different. But if you do vote it down -- here's where most … planning commissions get messed up.

"You either vote and it's a tie and you do nothing, well, it's automatically approved in 30 days. If you vote it down, but you don't give your reasons on the record tonight, it's going to be approved in 30 days. But it -- you're just like a jury. You decide. You vote.

"If five of you vote this plat down, and you state your reasons tonight, that's the final decision. I don't want you to assume it's going to be an appeal. I looked. I didn't see but about three cases that have ever been appealed. And when it does get appealed, it's not somebody suing the [C]ity. They just asking a circuit judge to review what you did. They can ask the appellate courts to review what you did. You can vote it down and give a reason -- and by the way, the law says you can give as many reasons as you want.

"Only one of them has got to be valid. So I've typed up eight of them for you ….

"….

"I'm asking … you make an affirmative motion to vote it down, second it, and then vote. And please state your reasons

on the record if you do so. And you will not be overturned. That's my opinion. I've researched it.

"....

"If you vote to approve it, it's approved. No reason has to be given. If you vote it down, you have to state your reason on the record here at the meeting tonight. One person's of the opinion it's got to be in writing. I'm of the opinion you can orally state it because we're being filmed. There's a nice little video of this. But you have to give a reason why you're denying it.

"I had one attorney tell me you -- to be safe, you need to make a motion to deny it or disapprove or vote down the plat, whatever you call it, a second, a discussion, if you want. Then, you vote. And if you vote to deny it, somebody has to say, okay, the reason is this.

"And I suggest you give a lot of reasons because if there's an appeal, if just one of those reasons is valid, it's going to be upheld. That's what I'm asking to do. If you want to vote it down, I'd like you to give every one of them eight reasons I gave you. And that's your discretion. I'm not trying to tell you what to do. But that would help down the road."

A commissioner moved to deny conditional approval of the preliminary plat, and that motion was seconded. Ann Clemons, the Chairperson of the Commission, then asked that those commissioners in favor of denying conditional approval of the preliminary plat raise their right hand. All nine commissioners raised their right hand, and Chairperson Clemons announced that the motion to deny conditional

approval of the preliminary plat carried by a 9-0 vote. After the vote, Chairperson Clemons polled some of the Commission's members as to the reasons they had voted to deny conditional approval of the preliminary plat. Commissioner Buddy Hardwich asserted that conditional approval of the preliminary plat should be denied for safety reasons. Commissioner Crews Reaves stated that he had voted to deny conditional approval of the preliminary plat for reasons relating to safety, drainage, and the applicability of the 2002 preliminary plat. Commissioner James Reid stated that he had voted to deny conditional approval of the preliminary plat because it did not conform with the 2002 preliminary plat. Commissioner Frank Cook cited the lack of a traffic study and the preliminary plat's deviations from the 2002 preliminary plat. The remaining five commissioners did not vocalize their reasons for disapproving of the preliminary plat.

On the following day, November 19, 2021, Thomas M. Tyson, Jr., the land-use-control administrator for the City and the Commission's executive secretary, sent Flowers & White a letter stating that the conditional approval of the preliminary plat had been denied for "safety reasons, drainage, and … [failure to] conform to the preliminary plat that

was approved in 2002." The minutes of the Commission's November 18,

2021, meeting were also considered and approved at its next meeting on

December 9, 2021. Those minutes contain the following entry:

> "Presented by Flowers & White Engineering representing T Investments, LLC requesting preliminary approval of County Downs Addition Preliminary Plat located on the east end of Paddock Lane in an R-75-[S] (Single-Family Residential) Zoning Districts.
>
> "ACTION: After thorough study and consideration and based on the facts as presented, a motion was made by Mr. Reaves, seconded by Mr. Dunn, and carried to deny this request for safety reasons, drainage, and this plat does not conform to the preliminary plat that was approved in 2002, by the following vote:
>
> | "AYES | : | UNANIMOUS | 9 |
> | "NAYS | : | NONE | 0 |
> | "RECUSED | : | NONE | 0 |
> | "ABSTAINED | : | NONE | 0 |
> | "ABSENT | : | NONE | 0" |

(Emphasis added.)

On December 30, 2021, T Investments and FHM petitioned the

circuit court for a writ of mandamus directing the Commission to

conditionally approve the preliminary plat submitted on November 18,

2021. The Homeowners Association of County Downs ("the HOA")

petitioned to intervene. The circuit court denied the HOA's petition, and

the HOA appealed. The Court of Civil Appeals upheld the circuit court's

12

order denying the HOA's petition to intervene. <u>County Downs Homeowners Ass'n v. T Invs., LLC</u>, [Ms. CL-2022-0572, Sept. 30, 2022] ___ So. 3d ___ (Ala. Civ. App. 2022) (table). The HOA, however, was allowed to file an amicus curiae brief in the circuit court.

On October 26, 2022, the circuit court heard oral arguments. At oral arguments, the Commission and the City conceded that T Investments had not been required to provide a traffic study, stating that, "[w]ith a planned unit development, you do have to have what they call a traffic study. However, with a preliminary plat, you do <u>not</u> have to have a traffic study." The Commission and the City additionally clarified that the lack of a traffic study is "just one thing. It's not safety. It's not drainage." The Commission and the City argued that the denial "wasn't based solely on what the residents [were] saying. It wasn't based solely on the traffic study. It wasn't based solely on the fact that the residents [were] concerned about the 75-feet homes and the 100-feet homes. They were, but it was also safety issues that [were] addressed." In addition, the Commission and the City raised no arguments pertaining to T Investments and FHM's failure to provide a traffic study in their answer to the mandamus petition. Attached to the Commission and the City's

answer, moreover, was the affidavit of Tyson, who stated that "T Investments presented a preliminary plat, whereas, a preliminary plat is a map of the property which can be used in any zoned district. For a preliminary plat, a traffic impact study is not required."

On December 2, 2022, the circuit court entered a judgment upholding the Commission's decision to deny conditional approval of the preliminary plat and denying T Investment and FHM's petition for a writ of mandamus. Specifically, the circuit court found that, although the stated reasons of "drainage" and "failure to conform to the [2002 preliminary plat]" were legally insufficient grounds for denying conditional approval of the preliminary plat, the Commission's decision to deny approval based on "safety reasons" was valid. According to the circuit court, it was upholding the Commission's decision to deny approval based on "safety reasons" because (1) § III.A.3(j) of the City's subdivision regulations "suggests a traffic analysis approved by the … Commission may be necessary for approval of the preliminary plat (based on the subdivision consisting of more than 50 dwelling units and/or where deemed appropriate by the planning commission)," (2) there was no traffic study provided at the time the preliminary plat was presented,

14

and (3) the transcript of the November 18, 2021, meeting reflects that Commissioner Cook stated that one of his reasons for denying the conditional approval of the preliminary plat was the lack of a traffic study. As the circuit court explained:

"The final reason cited by the … Commission for denying the preliminary plat was based upon 'safety.' The record reflects that at least one [c]ommissioner cited lack of a traffic study and potential danger to neighborhood residents caused by increased traffic in the area. While there was no objection to the preliminary plat from the traffic engineering department of the City of Montgomery, Sec. III(A)(3)(j) of [the City's subdivision regulations] governing requirements for preliminary approval of plats states:

"'Data required as a basis for the preliminary plat in A(1) above <u>shall include</u> the following information:

"'[(j)] For all planned unit developments, <u>subdivisions consisting of more than 50 dwelling units, and for any subdivision when deemed appropriate by the planning commission, a comprehensive traffic analysis, which must be approved by the planning commission</u>, indicating the probable effect of the proposed subdivision on traffic patterns and capacities of adjacent streets in the immediate area.'

"Because the foregoing City [subdivision regulation] suggests a traffic analysis approved by the … Commission may be necessary for approval of the preliminary plat (based on the subdivision consisting of more than 50 dwelling units and/or where deemed appropriate by the planning commission), this Court cannot find that the decision to deny

15

the plat due to safety concerns was arbitrary and capricious. While this Court may have reached a different decision than the … Commission, the standard of review requires that the Court uphold the Commission's decision unless it is arbitrary and capricious. While a close call, based upon the foregoing, the above-styled Petition for Writ of Mandamus is DENIED."

(Some emphasis added; some emphasis in original.) T Investments and FHM subsequently appealed the circuit court's judgment denying their petition for a writ of mandamus to this Court.

## Standard of Review

"There is no dispute that the proper standard of review in cases based on an administrative agency's decision is whether that decision was arbitrary or capricious or was not made in compliance with applicable law.

"'Our standard of review regarding administrative actions is very limited in scope. We review the circuit court's judgment without any presumption of correctness since that court was in no better position than this court to review the agency decision …. The special competence of the agency lends great weight to its decision. That decision must be affirmed unless arbitrary, capricious, or not made in compliance with applicable law …. Neither the circuit court nor this court may substitute its judgment for that of the administrative agency.'"

Ex parte City of Fairhope, 739 So. 2d 35, 38 (Ala. 1999) (quoting State Dep't of Revenue v. Acker, 636 So. 2d 470, 473 (Ala. Civ. App. 1994)).

## Discussion

At issue in this appeal is whether T Investments and FHM are entitled to a writ of mandamus directing the Commission to grant conditional approval of the preliminary plat. T Investments and FHM argue that the Commission failed to adequately state in writing its reasons for denying conditional approval of the preliminary plat within 30 days of the plat's submission and that such failure should have resulted in the automatic approval of the preliminary plat pursuant to § 11-52-32(a), Ala. Code 1975. We begin our analysis by reviewing the law governing a planning commission's decision to disapprove a subdivision plat.

I.

A planning commission's authority to regulate the subdivision of land is derived from legislative act. Smith v. City of Mobile, 374 So. 2d 305, 307 (Ala. 1979). "'In exercising its function approving or disapproving any particular subdivision plat, [a planning commission] acts in an administrative capacity, and is bound by any limitations on its authority contained in the legislation authorizing it to act, as well as any restrictions contained in its own regulations.'" Id. (quoting Boulder Corp. v. Vann, 345 So. 2d 272, 274 (Ala. 1977)).

17

Alabama's subdivision-control statutes, § 11-52-30 et seq., Ala. Code 1975, impose certain limitations on a planning commission's review of subdivision applications. As relevant here, § 11-52-32(a) provides that a planning commission "shall approve or disapprove a plat within 30 days after the submission thereof to it; otherwise, the plat shall be deemed to have been approved, and a certificate to that effect shall be issued by the municipal planning commission on demand." Section 11-52-32(a) further mandates that "[t]he ground of disapproval of any plat shall be stated upon the records of the municipal planning commission."

Appellate decisions interpreting § 11-52-32(a) make clear that the reasons assigned for the denial of a subdivision application must be both (1) valid and (2) "sufficiently clear … to inform a developer 'wherein the plan failed to meet the requirements of the regulations.'" Ex parte Pine Brook Lakes, Inc., 617 So. 2d 1014, 1016 (Ala. 1992) (quoting E.C. Yokely, The Law of Subdivisions § 54 (2d ed. 1981); see Smith, 374 So. 2d at 308 ("'Where a subdivision plan is disapproved, valid reasons must be given for such action.'" (quoting Yokely, supra, § 54 (1963 and Supp. 1979))); Mobile City Plan. Comm'n v. Southern Region Devs., Inc., 628 So. 2d 739, 740 (Ala. Civ. App. 1993) (affirming a trial court's decision to grant

18

mandamus relief to developer when planning commission cited existence of vague "concerns" and "questions" as reasons for denying developer's subdivision application).

As this Court explained in Sigler v. City of Mobile, 387 So. 2d 813 (Ala. 1980),

> "[i]n passing judgment on a landowner's proposed subdivision, [a planning commission] must assign its reasons for denial within thirty (30) days. If it does not do so, approval is automatic under the statute. An invalid reason is equivalent to no reason …."

Id. at 814 (emphasis added). Importantly, in addition to being both valid and unambiguous, the reasons for a planning commission's disapproval of a proposed subdivision plat must also be sufficiently recorded to comply with § 11-52-32(a). See Sadie v. Tyson, 539 So. 2d 1066, 1068 (Ala. Civ. App. 1988) (concluding that § 11-52-32(a) "requires that the grounds for the disapproval of any plat shall be stated upon the records of the planning commission within thirty days of the submission of the plat ….")

## II.

As noted above, the Commission cited three reasons for its denial of conditional approval of the preliminary plat: (1) "safety reasons," (2) "drainage," and (3) "this plat does not conform to the preliminary plat

19

that was approved in 2002." The circuit court found that all but one of those reasons were invalid. In particular, the circuit court concluded that, although some of the residents had expressed concern that the proposed development of the subject property would exacerbate existing drainage issues, "no data or other evidence was presented to bolster those concerns." The circuit court additionally concluded that "[t]he fact that a prior preliminary plat was approved calling for 100 ft. lots nearly two decades ago d[id] not serve as a valid legal basis for rejecting a preliminary plat that otherwise conform[ed] to the zoning requirements for the area."[3]

The circuit court, however, upheld the Commission's decision to deny conditional approval of the preliminary plat for "safety reasons." The circuit court asserted that, because a provision of the City's subdivision regulations "suggests a traffic analysis approved by the … Commission may be necessary for approval of the preliminary plat, … [it could] not find that the decision to deny the plat due to safety concerns

---

[3]In its judgment denying the mandamus petition, the circuit court also noted that the Commission and the City had raised the issue of standing, but it found that T Investments and FHM did have standing to seek mandamus relief.

was arbitrary and capricious." In reaching that conclusion, the circuit court acknowledged that the Commission had not mentioned the lack of a comprehensive traffic analysis as a ground for denial in the minutes for the November 18, 2021, meeting, but it stated that the submissions to the circuit court did reflect that at least one commissioner had cited the "lack of a traffic study and potential danger to neighborhood residents caused by increased traffic in the area" as a reason for his vote to deny conditional approval of the preliminary plat.

## III.

T Investments and FHM argue that the circuit court erroneously concluded that the "safety reasons" articulated in the meeting minutes were legally sufficient grounds for denying conditional approval of the preliminary plat. In response, the Commission and the City contest T Investments', and by extension FHM's, standing to petition the circuit court for a writ of mandamus. Alternatively, the Commission and the City contend that, assuming that T Investments did have standing to seek mandamus relief, the circuit court correctly concluded that the Commission's denial of conditional approval of the preliminary plat for "safety reasons" was legally sufficient. We first address the Commission

21

and the City's challenge to T Investments' standing to seek mandamus relief.

A.

The Commission and the City argue that, because FHM, and not T Investments, is the owner of the subject property, "T Investments was not the proper party to present the preliminary plat to the … Commission, and therefore, had no standing and no legal right to petition the trial court for [a] writ of mandamus." The Commission and the City's brief at 17. The Commission and the City's argument is premised on § I.B of the City's subdivision regulations, which provides:

> "B. Limits of jurisdiction. From and after the effective date hereof, these regulations shall govern all subdivision of land within the corporate limits of the City of Montgomery and its police jurisdiction. Any owner of land within the area governed by these regulations wishing to subdivide land shall submit to the Planning Commission a plat of the subdivision which shall conform at least to the minimum requirements and procedures set forth in these regulations."

The Commission and the City insist that, because the above provision states that the "owner of land … shall submit to the … Commission a plat of the subdivision," only FHM could have properly presented a preliminary plat to the Commission. Thus, according to them, T

22

Investments had no "standing"[4] to seek mandamus relief from the circuit court.

Notably, the Commission and the City's argument overlooks other relevant language in the City's subdivision regulations -- namely, the provisions of the regulations that pertain to the procedures for approval of a preliminary plat. As relevant here, those provisions provide (1) that "the subdivider may … proceed to prepare the preliminary plat for

---

[4]Although couched in terms of standing and jurisdiction, the Commission and the City's argument actually concerns whether T Investments and FHM have shown a clear legal right to a writ of mandamus. Importantly, the Commission and the City do not dispute that T Investments, as the intended developer of the subject property, has a legally cognizable interest that has been injuriously affected by the Commission's decision to deny conditional approval of the preliminary plat. See Ingle v. Adkins, 256 So. 3d 62, 71 (Ala. 2017) (plurality opinion) ("[T]o have standing to bring an action, the plaintiff must have an interest in the outcome of the action and show that he or she has suffered or imminently will suffer an injury."). Rather, they argue that, because T Investments was not the proper party to present the preliminary plat to the Commission, T Investments and FHM could not demonstrate that the Commission owed T Investments a clear duty to comply with § 11-52-32(a). See Campbell v. City of Hueytown, 289 Ala. 388, 390, 268 So. 2d 3, 4 (1972) ("An indispensable requirement for mandamus is the presence of a right in the applicant to the thing applied for."). Thus, the Commission and the City confuse T Investments and FHM's entitlement to a writ of mandamus with the circuit court's jurisdiction to consider the mandamus petition. In any event, and as discussed below, the Commission and the City's assertion that T Investments could not properly present the preliminary plat to the Commission is without merit.

23

submission," § II.A.2 of the City's subdivision regulations, and (2) that "the subdivider shall cause to be prepared a preliminary plat together with other supplementary material as deemed necessary by the Planning Commission and specified in section III." Id., § II.B.1.

As previously noted, the City's subdivision regulations define a subdivider as "[a]ny person or corporation or duly authorized agent who undertakes the subdivision of lands defined herein." Id., § IX.C (emphasis added). Thus, the City's subdivision regulations allow an agent of the landowner to prepare and present a preliminary plat. Here, T Investments and FHM presented the circuit court with affidavit testimony indicating that T Investments was acting as FHM's agent when it filed the application for conditional approval of the preliminary plat.[5] The City and the Commission do not acknowledge, much less dispute the accuracy of the facts alleged in, those affidavits.

---

[5]Specifically, the T Investments and FHM submitted the affidavits of James B. Marshall, Jr., a partner in FHM, and Foy Tatum, the owner of T Investments, who both testified (1) that FHM had entered into an agreement with T Investments to develop the subject property and (2) that, as part of that agreement, FHM had authorized T Investments to serve as its legal agent in presenting "the City … and the … Commission [with] documents needed for approval of a preliminary plat, construction permitting, final platting, and any other items needed to gain approval to develop the [subject] property."

Furthermore, the Commission never indicated that T Investments was not permitted to present the preliminary plat, and it did not cite that as a basis for its disapproval of the plat. Because the City's subdivision regulations permit the duly authorized agents of property owners to present preliminary plats to the Commission, and because the affidavits confirm the existence of an agency relationship between T Investments and FHM, the Commission and the City's argument that T Investments could not properly request the Commission's approval of the preliminary plat is without merit.

B.

We now turn to the merits of the arguments raised in T Investments and FHM's brief. T Investments and FHM contend that the Commission's denial for "safety reasons" was impermissibly vague and speculative and that the circuit court improperly "endeavored on a fact-finding mission to resolve this vagueness by reasoning that … 'safety reasons' could be broadly interpreted to mean there was a lack of the traffic study." T Investments and FHM's brief at 29 (emphasis in original). According to them, the meeting minutes control whether, pursuant to § 11-52-32(a), the Commission sufficiently stated its grounds for denying conditional

25

approval of the preliminary plat. T Investments and FHM additionally say that the Commission "did not and could not" base its disapproval on the lack of a traffic study because the City, as evidenced by Tyson's affidavit testimony, did not require a traffic study at the conditional-approval stage. Id. at 32.

The Commission and the City dispute T Investments and FHM's contention that judicial review of the Commission's decision in this case should be limited to the reasons recorded in the meeting minutes. Instead, they urge this Court to consider, cumulatively, the minutes of the meeting, the transcript of the meeting, and all other evidence in the record in determining whether the Commission adequately stated its grounds for denying conditional approval of the preliminary plat. According to the Commission and the City, because that evidence reflects that a traffic study was discussed during the meeting, and that one commissioner cited the lack of a traffic study as a reason for his vote to deny conditional approval of the preliminary plat, the circuit court correctly concluded that the Commission's denial for "safety reasons" was not impermissibly vague. They further contend that the discussions that took place during the meeting provided the Commission with a

26

reasonable basis for its decision to deny conditional approval of the preliminary plat for "safety reasons."

As a threshold matter, we agree with T Investments and FHM's contention that the meeting minutes, standing alone, fail to comply with the requirements of § 11-52-32(a). This Court has held that "[n]otification of disapproval must be accompanied by reasons sufficiently clear and definite to inform a developer 'wherein the plan failed to meet the requirements of the regulations.'" Ex parte Pine Brook Lakes, Inc., 617 So. 2d at 1016 (quoting Yokely, supra, § 54). In Ex parte Pine Brook Lakes, Inc., we concluded that the "planned county roadway construction" cited by Jefferson County as the basis for its disapproval of a preliminary-plat application was insufficient under our statutes and caselaw. Id. As we explained, "the purported explanation utterly fail[ed] to apprise [the developer] of the nature of the deficiency, and, consequently, of the nature of such amendments as would render the plans acceptable." Id. Here, the "safety reasons" stated in the meeting minutes gave no indication as to how T Investments and FHM could have altered their application to address the Commission's concerns.

27

As noted, however, the Commission and the City dispute T Investments and FHM's contention that review of the Commission's decision should be limited to the reasons recorded in the minutes of the Commission's November 18, 2021, meeting. Although this Court has held that a planning commission's reasons for denying a subdivision application must be recorded, we have not interpreted § 11-52-32(a) as requiring that those reasons be recorded in any specific type of document. Thus, we reject T Investments and FHM's contention that planning commissions can rely only on meeting minutes to satisfy § 11-52-32(a)'s requirement that valid grounds for a planning commission's denial of approval of a plat be adequately "stated upon the records of the municipal planning commission."

Nevertheless, even when we consider the Commission's meeting minutes, the transcript of the meeting, and other evidence in the record cumulatively, as the Commission and the City urge, that evidence does not reveal that the Commission recorded a sufficiently specific basis for its decision to deny conditional approval of the preliminary plat within 30 days -- or that the "safety reasons" cited in the meeting minutes pertained to the lack of a traffic study.

Crucially, although the transcript of the Commission's November 18, 2021, meeting reflects that several <u>potential</u> reasons for denying conditional approval of the preliminary plat -- both valid and invalid -- were raised and debated throughout the course of that meeting, at the time the commissioners voted to deny conditional approval of the preliminary plat, only four of the nine commissioners in attendance articulated their reasons for doing so. Of those four commissioners, moreover, only one, Commissioner Cook, referenced the lack of a traffic study, but he did not otherwise mention any safety concerns arising from the lack of a traffic study.[6] Furthermore, the two commissioners who expressly referenced safety as a reason for their votes to deny conditional

---

[6]Although the circuit court's judgment states that "[t]he record reflects that at least one [c]ommissioner cited lack of a traffic study and potential danger to neighborhood residents caused by increased traffic in the area," the transcript does not reflect that Commissioner Cook, or any other commissioner, cited the danger posed by increased traffic as a reason for disapproving the preliminary plat. According to the transcript, when asked for his reasons for denying conditional approval of the preliminary plat, Commissioner Cook responded as follows:

"Mr. Cook: My reason is that the interconnectivity of the roads, the traffic -- I don't think there's a question about [whether] the traffic study has to be done. And I've got a question about the, uh, the change with the plat -- with the preliminary plat that was done in 2002."

approval of the preliminary plat made no effort to identify with any particularity the bases for their stated safety concerns. Accordingly, although the transcript of the meeting may reflect that T Investments and FHM were made aware of various <u>potential</u> bases for the Commission's decision to deny conditional approval of the preliminary plat, the transcript does not indicate that T Investments and FHM were provided with meaningful notice of the <u>actual</u> basis for the Commission's collective decision to deny conditional approval of the preliminary plat.

The evidence in the record, moreover, undermines the circuit court's conclusion and strongly suggests that the Commission's disapproval of the preliminary plat was not actually related to the lack of a traffic study. As previously discussed, neither the meeting minutes nor the denial letter mentioned a traffic-study requirement. The Commission and the City's answer to the mandamus petition also made no reference to T Investments and FHM's failure to provide a traffic study.

Most importantly, attached to <u>the Commission and the City's answer</u> was the affidavit of Tyson, the City's land-use-control administrator, who stated that "T Investments presented a preliminary

30

plat, whereas, a preliminary plat is a map of the property which can be used in any zoned district. For a preliminary plat, a traffic impact study is <u>not</u> required." (Emphasis added.)

Likewise, at oral arguments before the circuit court, the Commission and the City expressly conceded that T Investments and FHM were not required to provide a traffic study for conditional approval of a preliminary plat, stating: "With a planned unit development, you do have to have what they call a traffic study. However, with a preliminary plat, you do <u>not</u> have to have a traffic study." (Emphasis added.)

Crucially, at no point in the proceedings before the circuit court did the Commission and the City argue (1) that § III.A.3(j) of the City's subdivision regulations required T Investments and FHM to submit a traffic study or (2) that the lack of a traffic study was a valid or actual basis for the Commission's disapproval of the preliminary plat. Thus, the record of the proceedings before the circuit court indicate that the Commission deliberately declined to adopt the lack of a traffic study as a basis for its disapproval in the meeting minutes and denial letter and that the Commission did not intend for the stated ground of "safety

reasons" to encompass T Investments and FHM's purported failure to submit a comprehensive traffic analysis.

The Commission and the City, for the first time in their briefing to this Court, now contend that the Commission's denial based on "safety reasons" was really because of the lack of a traffic study and therefore was not overly broad and vague. However, beyond approvingly reiterating the circuit court's findings and stating -- in conclusory fashion -- that Tyson's affidavit testimony "cannot override" the City's subdivision regulations,[7] the Commission and the City do not explain how the circuit court could have reasonably concluded that the Commission's denial of conditional approval of the preliminary plat for "safety reasons" was <u>actually</u> based on the T Investments and FHM's purported failure to comply with § III.A.3(j) of the City's subdivision regulations when, in proceedings before the circuit court, they never alleged that the lack of a traffic study was a ground for the Commission's decision and when their own employee swore that providing a traffic

_____

[7]We note that the question whether the City's subdivision regulations requires the submission of a traffic study is distinct from whether the Commission (1) actually based its denial T Investments and FHM's purported failure to provide a traffic study or (2) adequately stated its reasons for the denial.

study was not a requirement for conditional approval. See Noojin v. Mobile City Plan. Comm'n, 480 So. 2d 587, 590 (Ala. Civ. App. 1985) ("The commission would have this court judge the validity of the denial of approval, not just in terms of the reason given in the official denial letter …, but also in terms of the four purposes … set forth in the subsequent letter …. This we cannot do.").

The Commission and the City, moreover, distinguished the issue of the traffic study from the safety concerns cited by the Commission, explaining that the Commission's denial of conditional approval of the preliminary plat "wasn't based solely on the traffic study … [or] the fact that the residents w[ere] concerned about the 75-feet homes and the 100-feet homes. They were, but it was also safety issues that w[ere] addressed." (Emphasis added.)

For these reasons, we conclude that the Commission failed to satisfy § 11-52-32(a)'s requirement that valid and sufficiently specific grounds for its denial of approval of a subdivision plat be "stated upon the records" of the Commission within 30 days of the submission of the plat. See Ex parte Pine Brook Lakes, Inc., supra. Because that failure resulted in the automatic approval of the preliminary plat pursuant to

§ 11-52-32(a), T Investments and FHM are entitled to a writ of mandamus directing the Commission to conditionally approve the preliminary plat. See Sigler v. City of Mobile, supra.

Conclusion

Based on the foregoing, we reverse the judgment of the circuit court and remand the case with instructions that the circuit court grant the petition for the writ of mandamus.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Parker, C.J., and Shaw, Mendheim, and Mitchell, JJ., concur.

Bryan, J., concurs in the result.

Sellers, J., dissents, with opinion, which Wise and Stewart, JJ., join.

SELLERS, Justice (dissenting).

I respectfully dissent. This Court has long held that municipal planning commissions operate in an administrative capacity when "exercising [their] function approving or disapproving any particular subdivision plat." Boulder Corp. v. Vann, 345 So. 2d 272, 275 (Ala. 1977). Although the Alabama Administrative Procedure Act, § 41-22-1 et seq., Ala. Code 1975, does not apply to the City of Montgomery Planning Commission ("the Commission"), the majority correctly notes that, due to the administrative nature of municipal planning commissions as arms of municipal government, we must still accord the Commission's decision considerable deference and affirm it "'unless [it was] arbitrary, capricious, or not made in compliance with applicable law.'" Ex parte City of Fairhope, 739 So. 2d 35, 38 (Ala. 1999) (quoting State Dep't of Revenue v. Acker, 636 So. 2d 470, 473 (Ala. Civ. App. 1994)). But the majority's invocation of this standard of review appears to be nominal at best because it proceeds to do exactly that which the standard of review forbids: The majority "'substitute[s] its judgment for that of the [Commission].'" Id. Notably, in its de novo review of the trial court's judgment upholding the Commission's decision, the majority accepts

35

certain conclusions without any explanation, yet it ultimately reverses the trial court's judgment by parsing the judgment and reweighing the evidence before the Commission, deeming the Commission's recorded reasons legally insufficient to support the denial of conditional approval of the preliminary plat.

Relying on a series of appellate decisions construing § 11-52-32(a), Ala. Code 1975, the majority contends that a municipal planning commission's reasons for disapproving a preliminary plat must be not only valid but also "sufficiently clear" to apprise a developer of its plan's deficiencies. Ex parte Pine Brook Lakes, Inc., 617 So. 2d 1014, 1016 (Ala. 1992); see Smith v. City of Mobile, 374 So. 2d 305, 308 (Ala. 1979). Applying this standard requiring fair notice to the developer, the majority concludes that the "safety reasons" espoused by the Commission did not relate to the lack of a traffic study and that the Commission failed to record a sufficiently specific basis for denying conditional approval of the preliminary plat. In so concluding, the majority, in my view, applies the "sufficiently clear" prong in too exacting a manner, requiring a level of specificity well beyond what our precedents mandate. Indeed, the two cases the majority cites that applied this standard involved reasons for

denial that were so vague that the developer in each case had no guidance regarding "the nature of [the] amendments [that] would render the plans acceptable." Ex parte Pine Brook Lakes, Inc., 617 So. 2d at 1016 (noting that the planning commission's citation to a "planned county roadway construction" would authorize indefinite suspension of real-estate development, which was at odds with the commission's own regulatory time constraints); see Mobile City Plan. Comm'n v. Southern Region Devs., Inc., 628 So. 2d 739, 740 (Ala. Civ. App. 1993) (affirming a trial court's granting mandamus relief to a developer when the planning commission based its denial merely on "concerns" and "questions").

Such is not the case here. The trial court found that the Commission's decision to deny conditional approval of the preliminary plat because of "safety reasons" was valid, noting that at least one commissioner had cited as the bases for his vote the lack of a traffic study and -- more importantly -- the "potential danger to neighborhood residents caused by increased traffic in the area." And unlike the majority, I believe that § 11-52-32(a) requires only that the "ground of disapproval of any plat shall be stated upon the records of the municipal planning commission." It is logical to conclude that, based on all the

37

evidence presented at the Commission's November 18, 2021, meeting (which the trial court had before it), the addition of 244 houses in a subdivision will result in increased traffic and an increase in other attendant dangers, about which the current residents expressed their concerns. Surely the developers knew of those concerns as a result of discussions they had with the residents before the Commission's November meeting and as a result of views expressed by residents at the meeting. I do not believe the "sufficiently clear" prong required the Commission to record each safety concern that can be readily inferred from the residents' expressions of concern and the circumstances at the level of specificity the majority demands in order to affirm the trial court's judgment and uphold the Commission's decision.

One final note. The majority rests its decision on a series of cases interpreting § 11-52-32 as imposing rather specific and onerous time constraints and recording requirements. See Boulder Corp., 345 So. 2d at 276 (requiring a planning commission that disapproves a plat to record its ground for doing so within 30 days of the submission date); Sigler v. City of Mobile, 387 So. 2d 813, 814 (Ala. 1980) (holding that a proposed plan should have been automatically approved because "[a]n invalid

reason is equivalent to no reason"); <u>Ex parte Pine Brook Lakes, Inc.</u>, 617 So. 2d at 1016 (requiring that the "[n]otification of disapproval ... be accompanied by reasons sufficiently <u>clear and definite</u> to inform a developer '<u>wherein the plan failed to meet the requirements of the regulations</u>'"). But in so doing, I am concerned that the majority is impliedly reaffirming interpretations of § 11-52-32 that are inconsistent with the statute's plain meaning and that divest the Commission of its proper authority and the deference its decisions are due to be afforded, thereby rendering the arbitrary-and-capricious standard of review a nullity. Seeing as no party has asked that we overrule any of the decisions in those cases, however, I will withhold judgment on this matter until a later date.

Regardless of the questionable tenability of those aforementioned decisions, I believe the Commission recorded a valid and sufficiently clear reason for its denial; therefore, I would affirm the trial court's judgment.

Wise and Stewart, JJ., concur.